IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GINA WHITMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-1732 |
| v. | ) | |
| | ) | Judge Manish S. Shah |
| WHEATON VILLAGE NURSING AND | ) | Magistrate Gabriel Fuentes |
| REHABILITATION CENTER, LLC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………….. i

TABLE OF CASES……………………………………………………………………….. ii

I.    INTRODUCTION……………………………………………………………….. 1

II.   STATEMENTS OF FACT…………………………………………………………… 5

III.  SUMMARY JUDGMENT STANDARDS…………………………………………… 5

IV.   ARGUMENT…………………………………………………………………………… 6

    A.    Title VII Race Discrimination Claims…………….……………………… 6

        1.    Plaintiff was meeting Defendant's legitimate expectations…….. 7

        2.    Similarly situated non-black employees have been treated more favorably than Plaintiff…………………………………………… 9

        3.    Defendant's proffered reason for Plaintiff's termination is pretextual…………………………………………………………… 11

            a.    Defendant made discriminatory comments………………….... 11

            b.    Inconsistencies in this case place material facts n dispute……..12

                (1)  David Taylor's testimony is not supported by the evidence..13
                (2)  Meetings between management and dietary department Employees……………………………………………………….14
                (3)  Substance of Guzman and Gonzalez complaints…………...15
                (4)  Guzman and Gonzalez respected Plaintiff………………….16
                (5)  Statements regarding Rafael Rivera, Plaintiff's replacement.18
                (6)  Other contradictions in support of pretext…………………. 18

            c.    David Taylor's demeanor at his deposition supports conclusion that his explanation for Plaintiff's termination was a pretext for discrimination……………………………………………… 19

    B.    ADEA Claim ………………………………………………..……………… 20

V.    CONCLUSION……………………………………………………………………... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson* v. *Liberty Lobby*, 477 U.S. 242, 248 (1986)………………………………… 5

*Bay v. Cassens Transport Co*., 212 F.3d 969, 972 (7th Cir. 2000)………………….. 5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)…………………………………… 5

*Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001) ………………………………………………………………………….. 6

*Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000)…………………….. 5

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 54, 586 (1986)….. 5

*McKinney v. Office of Sheriff of Whitley County*, No. 16-4131, 2017 WL 3389370 (7th Cir. Aug. 8, 2017)…………………………………………………………………12

*Miller v. Chi. Transit Auth.*, 2018 WL 3970144, at *3 (N.D. Ill. Aug. 20, 2018)…….. 6

*Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016)………………… 6

*Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013)…………………………. 12

**Statutes**

Fed. R. Civ. P. 56 ………………………………………………………….       5

42 U.S.C. § 2000e……………………………………………………………..       6

NOW COMES the Plaintiff, GINA WHITMORE, by and through her attorneys, Barry A. Gomberg and Luanne M. Galovich of Barry A. Gomberg & Associates, Ltd., and hereby submits Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

## III. INTRODUCTION[1]

This matter is wholly inappropriate for a Motion for Summary Judgment.

The credibility and veracity of witnesses is a key component in deciding this matter. And, as will be discussed below, decision maker David Taylor admitted on the record that he lied to Plaintiff about the reason for Plaintiff's termination. (SOF ¶1) But this is not the only inconsistency in this matter. There are at least fifteen (15), if not more, material inconsistencies, contradictions and potential lies in the testimonies of Defendant and the Defendant's witnesses. The existence of so many inconsistencies and contradictions places the veracity of Defendant's witnesses at issue. And as so many of these conflicting factual testimonies are in direct conflict with each other, it requires credibility determinations, weighing of evidence and drawing of inferences, functions that should not be performed by the Court acting on the basis of a limited paper record, but by a jury after a complete live trial, where the witnesses' credibility and the weight to be given to the testimony can be fully explored and reliably determined.

Not only can contradictions be found between Plaintiff's testimony and that of Defendant's witnesses, but there is high degree of contradiction between the testimony presented by Defendant's own witnesses. This includes the alleged complaints made by Plaintiff's staff and the description of said complaints made by Defendant's management personnel. Additionally, there is conflicting testimonial evidence by Plaintiff (African-American) that her supervisor, Administrator David Taylor (non-African

---

[1] Factual citations will be as follows: Citations to Plaintiff's Statement of Additional Facts will be made as "SOF ¶___." Citations to Defendant's Statement of Facts will be made as "Def. SOF ¶ ____." Citations to Plaintiff's Response to Defendant's Statement of Facts will be made as "Resp. to Def. SOF ¶."

American, decisionmaker), and HR representative Melanie Tabieros (non-African American), made racially animus remarks about African Americans, but there is also disputed, material evidence regarding the start date of Plaintiff's replacement, Rafael Rivera (non-African American). Mr. Rivera and Luvenia Pipes (African American, CNA and former cook) claim that Mr. Rivera started working for Defendant on August 19, 2019, the same date that Plaintiff was terminated by Defendant. (SOF ¶2). Mr. Taylor, Ms. Tabieros and Maria Gonzalez all claim that Mr. Rivera began working for Defendant either weeks or months after Ms. Whitmore's termination. (SOF ¶2).

As will be demonstrated by the evidence, Gina Whitmore is a victim of racial discrimination. Despite the fact that she worked long hours ensuring that Defendant's residents were safely fed in accordance with government and business standards, Defendant terminated her without warning on the basis of her race.[2]

Wheaton Village's Dietary Department was severely understaffed during Plaintiff's tenure. Although there were typically four individuals scheduled to work, many times there were only two employees who reported on any given day. Plaintiff complained directly to the Administrator at Defendant, David Taylor, about the staffing shortages. (SOF ¶3). Yet, Plaintiff's complaints fell on deaf ears and were cavalierly disregarded. (SOF ¶4). Instead of hiring new staff, Taylor made comments such as, "That's what Black people do" in reference to the fact that Plaintiff's African American dietary aides were calling off work. (Def. SOF ¶36) Plaintiff was not permitted to hire new employees. (SOF ¶4). She had to make do with the staff she had on hand or hope that Defendant would eventually replace the missing staff members. Staffing shortages were not Plaintiff's fault. She had no control over it.

On August 19, 2019, without warning, Plaintiff was terminated from her position as Dietary Manager at Defendant. (SOF ¶8) She was informed that her termination was "without cause" and she

---

[2] Plaintiff withdraws her claim for age discrimination under the Age Discrimination in Employment Act.

was released without any further explanation. (SOF ¶¶8, 26, 27, 51) Defendant did not tell her at the time she was terminated that her termination was allegedly based upon complaints about her or her department. (SOF ¶¶8, 26, 27, 51). She was then replaced by a Hispanic male, Rafael Rivera, who suffered his own staffing shortages at Defendant as Plaintiff. (SOF ¶5). Nevertheless, two years later, he is still employed by Defendant while Plaintiff, an African American, lost her job after a little over one year. (SOF ¶5).

Plaintiff was not the first African American to be discharged by Defendant in 2019. Plaintiff went through orientation with two other African American managers – Jatavia (last name unknown) who was a social worker and Rhonda (last name unknown) who was the Director of Nursing. (SOF ¶6). One of them was terminated in or about February 2019 and the other in either March or April 2019. (SOF ¶6). When it was her turn to be terminated, Plaintiff knew that it had to be because of her race. Not only did the other two managers lose their positions, but Taylor had made several comments about Black people calling off work as described above, and Melanie Tabieros in HR would say, "Oh, your sisters called off again. Black people call off all the time." (SOF ¶21).

Defendant attempts to raise the specter that Plaintiff had been terminated because her staff was threatening to quit unless she was fired. Guzman testified that she did not threaten to quit. SOF ¶22). And there is no clear evidence that Gonzalez informed Tabieros that she was quitting. SOF ¶22). Oddly, no investigation took place by Taylor, Tabieros or anyone else at Defendant. What is also peculiar is the inability of Defendant's witnesses to come up with a consistent and/or cohesive set of basic facts. It is this lack of consistency and the direct contradiction of the evidence in this matter which makes this case wholly inappropriate for a dispositive motion. In fact, the testimony of the key witnesses is ***so riddled with inconsistencies and contradictions*** that no one reading the transcripts can obtain a clear understanding of the truth or falsity of the facts Defendant purports are

supportive of its decision to terminate Plaintiff. Said material issues of fact which are in dispute and

subject to conflicting testimony amongst witnesses include the following:

- Whether Plaintiff was terminated because of the alleged "Complaints about her" or because of her race
- Whether Guzman and Gonzalez complained to Melanie Tabieros regarding being short-staffed and overworked as a result, or whether they were complaining about Plaintiff
- Whether or not Plaintiff was told there were complaints made about her at the time of her termination
- To whom and how often Guzman and Gonzalez allegedly complained to Human Resources about Plaintiff
- Whether Guzman or Gonzalez threatened to "quit" if Plaintiff was not terminated
- Whether Plaintiff "screamed" at her staff or merely raised her voice while angry that the Dietary Department staff were not able to complete their duties in a timely manner so that the residents could be fed
- Whether Plaintiff assisted in the kitchen on days when they were short-staffed
- Whether Plaintiff was liked by her staff
- Whether Rafael Rivera replaced Plaintiff on the same day she was terminated or months after her termination
- Whether Rafael Rivera has workers who regularly do not show up for work
- Whether Defendant discriminated against Luvenia Pipes when they did not investigate or discipline Rafael Rivera
- How much assistance Plaintiff gave to her staff, especially when short-staffed
- Whether Guzman and Gonzalez were allowed to take breaks by Plaintiff while working under Plaintiff

The foregoing are all disputed material facts which will be explored in greater detail below.

It will be demonstrated that, not only are the facts disputed amongst the Parties, but Defendant's own

witnesses cannot agree as to the facts.

Sadly, it is almost comical how contradictory the testimonies of Defendant's witnesses really

are. For these reasons alone, a reasonable trier of fact could easily conclude that Defendant's reasons

for Plaintiff's termination were merely a pretext for racial discrimination. As such, Plaintiff

respectfully requests that this Honorable Court dismiss Defendant's Motion for Summary Judgment

in its entirety and set this matter for Trial.

## IV.  STATEMENTS OF FACT

Plaintiff incorporates by reference Plaintiff's Response to Defendant's Statements of Fact and Plaintiff's Statements of Additional Fact filed with this Memorandum.

## V.  SUMMARY JUDGMENT STANDARDS

Summary Judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out 'an absence of evidence to support the non-moving party's case." *Id*. at 325.  Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  A "genuine issue" in the context of a Motion for Summary Judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 54, 586 (1986).  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc*., 216 F.3d 596, 599 (7th Cir. 2000).  In ruling on a Motion for Summary Judgment, the Court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co*., 212 F.3d 969, 972 (7th Cir. 2000).

## VI.  ARGUMENT

### A.  Title VII Race Discrimination Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  To establish a *prima facie* case for race discrimination, a Plaintiff must show that "(1) she is a member of a protected class; (2) she was performing her job in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) similarly situated employees were treated more favorably." *Miller v. Chi. Transit Auth.*, 2018 WL 3970144, at *3 (N.D. Ill. Aug. 20, 2018) (citing *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001)). If the Plaintiff establishes a *prima facie* case, "the burden shifts to the defendant 'to identify a legitimate, nondiscriminatory reason for the action taken.'" *Id*. If such a reason is identified, the burden shifts back to the plaintiff to show that the 'proffered reason was pretext for [unlawful] discrimination. *Id.*   In employment discrimination matters, the core question at the summary judgment stage is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016).

Here, there is no dispute, that Plaintiff is black and that she experienced an adverse employment action as a result of her termination.  Furthermore, Plaintiff received an outstanding job performance evaluation by Taylor just three months prior to her termination and identified at least one comparable employee who has been treated more favorably than Plaintiff.

### 1. Plaintiff was meeting Defendant's legitimate expectations

Plaintiff was meeting Defendant's legitimate expectations. Plaintiff received a performance evaluation dated May 7, 2019 rating Plaintiff as "Outstanding" in her work with only a couple ratings of Above Average. (SOF ¶7). In said evaluation, David Taylor specifically stated, "works when employees are unavailable. Fills in till [sic] they return. (Well done)." (SOF ¶7). Then, on August 19, 2019, the date Plaintiff was terminated by Defendant, a "Termination/Resignation" form was inserted into Plaintiff's file that indicated that the "Reason for termination" was "Without cause." (SOF ¶8). Said document was signed by both David Taylor and Melanie Tabieros in HR. *Id*. On August 23, 2019, Melanie Tabieros inserted an "Employer Response Form" into Plaintiff's file. (SOF ¶9). Said form indicated that the reason for Plaintiff's termination was because "Employment [was] not working out." Furthermore, in response to the question, "Did the claimant violate a known rule or policy?" Defendant inserted "No." (SOF ¶9).

In addition to the foregoing, there was absolutely nothing provided to Plaintiff prior to, or at the time of her termination, that indicated that she was not meeting Defendant's legitimate performance expectations. As stated previously, Defendant admits in their Motion for Summary Judgment that the reason given to Plaintiff regarding her termination was a lie. Defendant claims that they actually terminated Plaintiff because other employees complained about her and so David Taylor made the decision to terminate Plaintiff because allegedly he did not want his Dietary Department staff to quit. But there is no documentary evidence at all to indicate that either of the staff members, Guadalupe Guzman or Maria Gonzalez, were threatening to quit because of Plaintiff. In fact, both submitted handwritten notes to Melanie Tabieros on August 6, 2019 complaining about being overworked due to being short-staffed. But nowhere in the handwritten complaints do either of the employees threaten to quit if Plaintiff was not terminated. (Def. SOF ¶¶28, 29).

The only document referring to threats of quitting were written by Ms. Tabieros. (Def. SOF ¶34). The document was written more than a month *after* Plaintiff was terminated. Ms. Tabieros made no contemporary notes during the conversations she had with Ms. Guzman and Ms. Gonzalez. (SOF ¶11). Rather, she had to "remember" what was said almost two months prior to writing the note that she placed into Plaintiff's employment file nearly two months later. As for the complaining employees' testimony, both Ms. Guzman and Ms. Gonzalez testified that they spoke with Melanie Tabieros in HR about being shorthanded in the Dietrary Department, and Guzman (but not Gonzalez) testified that she also talked to Defendant's new owner, David Mashiach. Furthermore, Guzman testified that she did not tell anyone in management that she intended to quit. (SOF ¶12). And there is no evidence that Gonzalez said that she told Defendant that she was going to quit. (SOF ¶12).. However, according to Taylor, Ms. Tabieros told him that both Guzman and Gonzalez were crying and threatening to quit unless Ms. Whitmore was terminated. If this were true, why did Ms. Guzman and Ms. Gonzalez state in their depositions that they did not want Ms. Whitmore fired and that they were only complaining about being shorthanded in Dietary? David Taylor did not even bother to discuss this matter with either Ms. Guzman or Ms. Gonzalez. (SOF ¶23).

Furthermore, there was a policy of progressive discipline in place at Defendant. However, Plaintiff was never given anything resembling a warning prior to her termination. In his deposition, Taylor said it was due to "timing." (SOF ¶15). However, Taylor also admitted that there was nothing in the Employee Handbook that said that "because of timing or because other employees are going to walk off the job that you are not allowed to provide progressive discipline or you don't have to provide progressive discipline." (SOF ¶15). Taylor claims that he terminated Plaintiff nearly two weeks after the complaints were allegedly made because he was immediately concerned that Guzman and Gonzalez would walk off the job. This explanation makes no sense either. Guzman testified that she

did not tell anyone in management that she intended to quit. And there is no evidence that Gonzalez said that she told Defendant that she was going to quit. Taylor's proffered reasons for discharging Plaintiff was pretextual, lacked credibility, and was inconsistent with Guzman and Gonzalez. Why wait two weeks? If Ms. Guzman and Ms. Gonzalez were allegedly at the end of their ropes and ready to quit immediately, why did Taylor wait to terminate Ms. Whitmore? It is not as if he was delayed because he was investigating the matter. There was no investigation. Nor did Taylor immediately add more staff to the Dietary Department to take the stress of overwork away from the employees.

In summary, the evidence indicates that Plaintiff was more than meeting the legitimate expectations of her employer: she attended work regularly, she performed her duties in an outstanding manner, she assisted her staff when they were short-handed and she received an outstanding performance appraisal report from Defendant.

## 2. Similarly situated non-Black employees have been treated more favorably than Plaintiff

Defendant also contends that Plaintiff has not identified any similarly situated non-Black employee who was treated more favorably than her. This is also not accurate. Rafael Rivera, Plaintiff's replacement, is directly comparable to Plaintiff. They had the same job, worked with many of the same staff for some period of time, was supervised by Administrator David Taylor, and is still employed by Defendant even though he had issues with having employees regularly not show up for work. Rafael Rivera is Hispanic and not African American. (SOF ¶5). Mr. Rivera filled out an employment application with Defendant on August 9, 2019, which is prior to Plaintiff's termination.

In fact, according to Mr. Rivera and CNA Luvenia Pipes (afternoon cook at the time), Rivera began working for Defendant the same day that Plaintiff was terminated – August 19, 2019. (SOF ¶2). Rivera was hired by Administrator David Taylor. (SOF ¶16). However, again in direct

contradiction to Rivera's own testimony, both Tabieros and Taylor both claim that Mr. Rivera was not even interviewed and hired until after Plaintiff was terminated. Whose version is accurate? Mr. Rivera who was hired to replace Plaintiff (and whose testimony is supported by another employee, Luvenia Pipes), or Ms. Tabieros and Mr. Taylor who are covering up for their racially discriminatory conduct towards Plaintiff?

According to Taylor, he learned of Rafael Rivera through a personnel agency. (SOF ¶17). Per Taylor, Rivera was interviewed after Plaintiff's termination. (SOF ¶17). Taylor said that Defendant went approximately two weeks without a Dietary Manager before Rivera was hired to replace Plaintiff. (SOF ¶17). Tabieros claimed that they put out an advertisement after Plaintiff's termination. (SOF ¶17). However, Mr. Rivera disputes this statement. Rivera, as stated above, started working the same day that Plaintiff was terminated. (SOF ¶2). Mr. Rivera's testimony is in direct conflict with Mr. Taylor's testimony. Guadalupe Guzman (cook and complainer) even testified in her deposition that there were months between Plaintiff's termination and Mr. Rivera's hire.

Gonzalez testified that approximately twice per week she complains to Rivera about being shorthanded at work. (SOF ¶18). She also testified that Rivera stays in his office but comes out and checks on staff during day. (SOF ¶18). Gonzalez testified that Rivera puts stock away and checks if everything is done and "that is all he does." (SOF ¶18).

Additionally, Mr. Rivera (Hispanic) and Luvenia Pipes (African American) have had serious issues working together. According to Ms. Pipes, she complained about how Mr. Rivera was treating her but management disregarded her complaints. (SOF ¶19). If Mr. Taylor was truly motivated by keeping his long term employees happy, he would have terminated Mr. Rivera and kept Ms. Pipes as the afternoon cook in the Dietary Department. Instead, in this circumstance, management disregarded an African American employee's complaints and kept their non-African American manager.

Management did nothing about Ms. Pipes' complaints and she was forced to become a part time worker and while she continued to work under Rivera. (SOF ¶19).

This employment situation almost mirrors that which led to Plaintiff's termination by Defendant.

### 3. Defendant's proffered reason for Plaintiff's termination is pretextual

As indicated above, if a Plaintiff is able to articulate a *prima facie* case for discrimination, the Defendant is given an opportunity to articulate a legitimate business decision for its actions, ie, terminating Plaintiff's employment. It is then Plaintiff's responsibility to identify reasons why Defendant's proffered reason is a pretext for discrimination.

#### a. Defendant made discriminatory comments

Plaintiff has provided sufficient evidence of racial animosity and motivation for her termination which demonstrates that Defendant's reason for her termination is pretextual.

First, Plaintiff testified that, on three or four occasions when she informed Taylor that one or more of her employees had taken off, Taylor responded "that's what black people do." (Def. SOF ¶ 36). Plaintiff was offended by Taylor's statements and immediately confronted him. Plaintiff told Taylor, "I don't like when you said that, David. What do you mean by that? I'm black, and I don't call off. I've never called off since the time I've been here. Only for when I had two bereavements in my family when my brothers passed." (SOF ¶20).

Plaintiff further testified that approximately twice Ms. Tabieros (non-African American) made comments concerning Black women taking off work. (Def. SOF ¶ 38; Whitmore Dep. p. 37:1-10). According to Plaintiff, when other Black managers would not show up for work, Ms. Tabieros would say, "Oh, your sisters called off again. Black people call off all the time." (SOF ¶21).

Defendant also terminated the other two Black managers who were hired at the same time as Plaintiff, Jatavia who was a social worker and Rhonda who was the Director of Nursing. One was terminated in February 2019 and the other lost her position in either March or April of 2019. (SOF ¶6).

Furthermore, as discussed above, Defendant disregarded Ms. Pipes' (African American) complaints about harassment she experienced under her supervisor, Rafael Rivera (Hispanic). Taylor did not discipline Mr. Rivera. However, when two Hispanic employees complained about being overworked in the Dietary Department under Plaintiff (African American), Taylor chose to terminate Plaintiff.

Finally, Defendant attempts to raise utilize the common actor inference in defense of Taylor's termination of Plaintiff's employment. The common actor inference says it is reasonable to assume that if a person was unbiased at Time A (when he decided to hire the plaintiff), he was also unbiased at Time B (when he fired the plaintiff)." *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013). However, it is *only* an inference and the Seventh Circuit clarified that "this inference is not a conclusive presumption and that it should be considered by the ultimate trier of fact rather than on summary judgment or the pleadings." *McKinney v. Office of Sheriff of Whitley County*, No. 16-4131, 2017 WL 3389370 at *9 (7th Cir. Aug. 8, 2017)

Here, the evidence points to the conclusion that Taylor terminated Plaintiff on the basis of her race and that Defendant's proffered reason for Plaintiff's termination is pretextual. As a result, Summary Judgment should be denied and this case should be set for a Trial on the merits before a trier of fact.

**b. Inconsistencies in this case place material facts in dispute**

The deposition testimony of Defendant and its witnesses is replete with important factual inconsistencies and contradictions, many of which have been referenced above. The sheer number

of inconsistencies and contradictions in the deposition testimony and documentary evidence support the proposition that Defendant's reason for Plaintiff's termination is a pretext for discrimination and that Summary Judgment should be denied.

## (1) David Taylor's testimony is not supported by evidence in the case

According to David Taylor, he allegedly decided to terminate Plaintiff because Guzman and Gonzalez were threatening to quit because of Plaintiff. (SOF ¶22). However, Guzman testified that she did not threaten to quit. (SOF ¶22). And there is no clear evidence that Gonzalez informed Tabieros that she was quitting. (SOF ¶22). Taylor further testified that the complaints were reported verbally through Melanie Tabieros, and through written complaints submitted by Guzman and Gonzalez. (SOF ¶23). However, Taylor stated that he never personally spoke to Guzman or Gonzalez about their complaints. (SOF ¶23). The complaints of Guzman and Gonzalez were the only complaints Taylor claims to have received about Plaintiff. (SOF ¶23). Taylor admitted that he had no reason to believe Plaintiff lied about anything. (SOF ¶24). Other than the complaints made by Guzman and Gonzalez, Taylor testified that Plaintiff was doing a good job at Defendant. (SOF ¶25). Per the performance evaluation performed on Plaintiff by Taylor just 3 short months before her termination, Plaintiff was rated at outstanding in her performance and praised for helping when needed. In fact, Taylor testified that he never told Plaintiff that there was a problem with how she was performing her job. (SOF ¶26).

Taylor later claims that he informed Plaintiff about the complaints against her when he terminated her. (SOF ¶26). However, Taylor also testified that when he terminated Whitmore that he handed her a document to sign and that all he said was she was being terminated "without cause." (SOF ¶26). This statement is not consistent with Taylor's testimony that he told Plaintiff she was

being terminated because there were complaints by Guzman and Gonzalez. (SOF ¶26). Plaintiff further denies having a conversation with Taylor regarding complaints by Guzman and/or Gonzalez. (SOF ¶27). Additionally, Tabieros, who also attended the termination meeting with Taylor and Plaintiff, stated that she was surprised that David Taylor made the decision to terminate Plaintiff. (SOF ¶50). According to Tabieros, on the day of Plaintiff's termination, Taylor informed Tabieros that Plaintiff was being terminated for "no cause" which she understood to mean for no reason at all. (SOF ¶51).

How can this be the case if Taylor claims that he told Plaintiff about the complaints during said meeting? Neither Tabieros nor Plaintiff could recall any such explanation coming from Taylor.

But as Taylor already admitted, he "lied." (SOF ¶1). Taylor testified in his deposition that when he stated that Whitmore was terminated without cause that it was not the truth. (SOF ¶1). Taylor admitted that he never told Tabieros that the reason he was terminating Plaintiff was because of Guzman and Gonzalez. (SOF ¶28). However, Taylor also said that Tabieros knew the reason behind Plaintiff's termination because Tabieros had been feeding him the information concerning the complaints of Guzman and Gonzalez. (SOF ¶29).

**(2) Meetings between management and Dietary Department employees**

According to Guadalupe Guzman (who had a translator present at her deposition), she went to management on August 6, 2019 to discuss the Dietary Department. Co-worker Maria Gonzalez was with her. Guzman stated that they spoke with Melanie Tabieros separately. (SOF ¶29). She also indicated that the new owner David Mashiach was in the offices at the time. (SOF ¶30). Tabieros confirmed that the new owner, David Mashiach, was in the office but not in their meeting. (SOF ¶31). What is truly bizarre is the fact that David Taylor (who was the Administrator) kept denying during his deposition that David Mashiach was affiliated with Defendant until months after Plaintiff

was terminated. (SOF ¶32). According to Taylor, David Mashiach did not become affiliated with Defendant until December 2019. (SOF ¶32). Clearly, Tabieros and Taylor are at odds on this point. Tabieros and Guzman claim that Mashiach was the new owner and that he was in the office on August 6, 2019. Taylor swore that he did not know whether Mashiach was the owner and that he did become affiliated with Defendant until December 2019. (SOF ¶33). As Administrator at Wheaton Village, Taylor was in charge of running the facility. Tabieros and all of the managers reported to him and he reported directly to the owner. To not know that David Mashiach was the owner is questionable, to say the least.

Guzman testified in her deposition that she only complained to HR once. ((SOF ¶34). This is contradicted by Tabieros who claimed that Guzman came to her office to complain twice. (SOF ¶34).

According to Maria Gonzalez, she complained to HR three times. (SOF ¶35). The only person she spoke to was Melanie Tabieros. (SOF ¶35). Tabieros testified that she only spoke with Gonzalez twice. (SOF ¶34). Gonzalez said no one else was present during the August 6, 2019 meeting. (SOF ¶35). She did not speak with David Mashiach or state that he was even present in the offices when she spoke with Melanie Tabieros. (SOF ¶35). Neither Guzman nor Gonzalez spoke with David Taylor. (SOF ¶35). Guzman did not expect Defendant to respond to their complaints and was not surprised when two weeks passed by and they did not receive any response from Defendant. (SOF ¶36).Neither Guzman nor Gonzalez quit their job while Plaintiff was their manager. (SOF ¶36).

### (3) Substance of Guzman and Gonzalez complaints

Both Guzman and Gonzalez verbally complained to Tabieros in HR about being short-handed.

Guzman complained that she had to do extra work because they were shorthanded most of the time. Guzman admitted that Plaintiff did not do the hiring. (SOF ¶37). Plaintiff did not do the hiring. Guzman also complained that Plaintiff stayed in her office all of the time and did not even make her

own supply list. (SOF ¶38). However, she also admitted that Plaintiff stayed later than she did and she did not know what Plaintiff did during that time. (SOF ¶38). Gonzalez testified that Plaintiff did order supplies and put them away. (SOF ¶39). Guzman testified that Tabieros did not say a word in response to her complaint about being shorthanded and overworked. Guzman said she never spoke with David Taylor, the administrator.

Most importantly, Guzman stated in her depositions that she ***NEVER*** testified that they told David Taylor or Melanie Tabieros that they were going to quit because of Plaintiff and there is no definitive evidence that Gonzalez threatened to quit. This is in direct contradiction to the statements of Melanie Tabieros and David Taylor who said that Guzman threatened to quit if Plaintiff was not fired.

Guzman stated that Plaintiff helped cook, wash dishes, and set the table early in 2019, but did not help when they were shorthanded during the last few months of Plaintiff's employment. (SOF ¶40). Maria Gonzalez, however, said that when Guzman (the cook) and the other two workers did not show up for work that Plaintiff would always take on the task of cooking and work with Gonzalez throughout the day to get the residents fed. (SOF ¶40). Additionally, both Guzman and Gonzalez admitted that Plaintiff would wash dishes, set tables, put up stock, etc. ((SOF ¶40). In the end, Gonzalez conceded that Plaintiff even tried to reduce the number of dishes to be washed by getting paper plates for the dining room. (SOF ¶40).

Guzman also stated in her deposition that Plaintiff was not doing her job when it came to ordering supplies. She referenced the fact that they did not always have special milk that was given to some residents. However, this is belied by her later testimony where she said that a lack of supplies did not occur as often as she originally testified. It only occurred maybe once or twice.

Guzman made no other complaints to Tabieros other than the foregoing.

**(4) Guzman and Gonzalez respected Plaintiff**

Both Guzman and Gonzalez respected Ms. Whitmore. They felt that they could speak with her but never discussed their problems with her. Even after they complained about being short-handed, neither Guzman nor Gonzalez were aware that Defendant would terminate Ms. Whitmore. Guzman and Gonzalez were complaining about being short-staffed and both knew that Ms. Whitmore could not hire new employees.

Gonzalez was never "mad" at Plaintiff. (SOF ¶41). No one ever told Gonzalez that they did not want to work with Plaintiff. (SOF ¶13). Gonzalez enjoyed her job when she was working under Plaintiff. (SOF ¶41). And although Gonzalez claimed that Plaintiff "screamed" at her, she said it was just like raising your voice. (SOF ¶42). Per Gonzalez, the only difference is that you "scream" when you are mad and "yell" when you are not mad. (SOF ¶42). Both constituted raising your voice. (SOF ¶42). Interestingly, Taylor admitted that he visited 8 of 12 of the departments at Defendant on a daily basis. When he was walking through the Dietary Department, he did not recall hearing Plaintiff or anyone else raising their voices. (SOF ¶43). According to Taylor, everybody raises their voice at Defendant because it is how they get heard. (SOF ¶43). However, Taylor could not recall if he ever discharged anyone but Plaintiff for raising her voice. (SOF ¶43). In any event, with the number of times Taylor walked through Dietary, Taylor never came across Plaintiff acting inappropriately towards her staff. (SOF ¶43).

Again, Defendant claims that Guzman and Gonzalez threatened to quit if they did not fire Plaintiff. However, Guzman and Gonzalez' testimony does not support Defendant's statements. Nor are Defendant's statements supported by the written complaints submitted by Guzman and Gonzalez. Neither wrote in their statements that they would quit if Plaintiff was not terminated.

Guzman and Gonzalez stated that management did not speak with them after they complained about being short-handed. In the end, Guzman did not stay employed with Defendant after Plaintiff

was terminated. (SOF ¶44). And Gonzalez admitted that she has never looked for another job, even when Plaintiff was her supervisor. (SOF ¶44). And on the day Plaintiff was terminated, Guzman stated that Plaintiff spoke to her staff where she thanked them and wished them well. (SOF ¶45).

### (5) Statements regarding Rafael Rivera, Plaintiff's replacement

According to Guzman, Mr. Rivera replaced Plaintiff and then they had a full staff (i.e, no one called in). (SOF ¶46). Guzman stated that Rivera spoke Spanish and he only had to fill in once in a year because of staff shortage. (SOF ¶47). However, Gonzalez stated that they are short-staffed at least two times per week under Rivera. (SOF ¶48). Gonzalez stated that he showed up one day and said he was the new boss. (SOF ¶49). She said he showed up approximately 2-3 months after Plaintiff left. (SOF ¶49). But, this is contrary to the testimony of Rivera and Pipes, the former evening cook and CNA at Defendant, who testified that Rivera became the new Dietary Manager on the same day that Plaintiff was terminated – August 19, 2019. The fact that Rivera applied for Plaintiff's position approximately 1.5 weeks prior to Plaintiff's termination makes Pipes' recollection of Rivera's start date more likely. And the fact that Rivera himself confirms that his start date was August 19, 2019 is almost conclusive evidence of same.

### (6) Other contradictions in support of pretext

Interestingly, Defendant does not inform the Court in its Motion for Summary Judgment that Melanie Tabieros, the only individual who spoke with Guzman and Gonzalez, testified that she was surprised that David Taylor made the decision to terminate Plaintiff. (SOF ¶50). According to Tabieros, on the day of Plaintiff's termination, Taylor informed Tabieros that Plaintiff was being terminated for "no cause." (SOF ¶51). This is also the reason that was provided to Plaintiff. Tabieros testified in her deposition that she did not believe that Plaintiff would be terminated because Guzman and Gonzalez complained about being short-handed. Why not tell Plaintiff at the time of her

termination, or at the very least Melanie Tabieros in HR, that Plaintiff was allegedly being terminated because her staff made complaints against her?

Tabieros also did not take notes regarding her conversations with Guzman and Gonzalez which Defendant states occurred twice, once in the Summer 2019 and on August 6, 2019. This recollection is contradicted by Guzman and Gonzalez. According to Guzman, she only complained once. Gonzalez said she complained three times. Both stated that they were complaining that they were tired of working short-handed. Which is it? Once, twice or three times? The only consistent day of complaints is August 6, 2019. That is the same day that Defendant claims it received the written statements of Guzman and Gonzalez.

Oddly, Plaintiff was not terminated until August 19, 2019, thirteen (13) days after the "complaints" were made. Yet, according to Guzman and Gonzalez, no one followed up with them following their complaints to Tabieros. According to Whitmore, no one informed her of the complaints of Guzman and Gonzalez, nor did they question her about any alleged complaints. And as stated above, Taylor told neither Tabieros nor Plaintiff the reason why Plaintiff was being terminated. In fact, Tabieros did not add a statement regarding her conversation(s) with Guzman and Gonzalez until September 23, 2019, thirty-six (36) days after Plaintiff was terminated and forty-eight (48) days after the conversations.

Defendant lied about the reason for Plaintiff's termination. Defendant cannot put forth consistent, corroborated testimony regarding alleged complaints about Plaintiff and the reasons for her termination. For these reasons alone, Defendant's Motion for Summary should be denied.

### c. David Taylor's demeanor at his deposition supports conclusion that his explanation for Plaintiff's termination was a pretext for discrimination

During his deposition, Taylor was argumentative, combative and rude. He accused Plaintiff's counsel on numerous occasions of asking "frivolous questions." (SOF ¶52). On a few occasions

when Plaintiff's counsel would state that he was confused by the witness' testimony (ie, that Taylor was making contradictory statements), Taylor would remark Plaintiff's counsel was "confusing him too." (SOF ¶52). The *coup de gras* was when Taylor would state that he lacked a clear recollection of certain events because he "retired a month ago." (SOF ¶52). Retirement does not automatically wipe a person's memory clear of details. This is especially true when an employee who had been running a facility for many years retires only 30 days prior. Taylor's claims that he could not recall business details due to his retirement is consistent with and indicative of a person who is being evasive and unwilling to provide truthful statements.

### B. ADEA Claim

Plaintiff withdraws her ADEA claims.

### CONCLUSION

Plaintiff presents a record replete with disputed issues of material facts, demonstrating that she was discriminated against by Defendant. The decisionmaker, David Taylor, admits to lying about the reason for Plaintiff's termination. Plaintiff is African American and was told by Taylor that she was doing an outstanding job for Defendant. Plaintiff was told on August 19, 2019 that she was being terminated without cause and was never told about any alleged complaints by her staff regarding short staffing or her management of her department. Defendant has attempted to establish that they are entitled to Summary Judgment, but the testimony they put forth is so riddled with contradictions, that it will take a Trial on the merits to sift through inconsistencies and contradictions. Defendant's proffered reasons for Plaintiff's termination is a pretext for termination.

Based on the genuine issues of material fact in dispute, Plaintiff respectfully requests that this Court deny Defendant's Summary Judgment motion in its entirety.

Respectfully submitted,

GINA WHITMORE

By:    s/Barry A. Gomberg
            Attorney for Plaintiff

Barry A. Gomberg
Luanne M. Galovich
Barry A. Gomberg & Associates, Ltd.
53 West Jackson Blvd., Suite 1350
Chicago, Illinois  60604
gomberglaw@aol.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 31, 2021, I electronically filed the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mary Smigielski
Kenneth D. Walsh
Lewis Brisbois
550 West Adams Street, Suite 300
Chicago, IL. 60661
Mary.Smigielski@lewisbrisbois.com
Kenneth.Walsh@lewisbrisbois.com

*Attorneys for Defendant*

/s/ Barry A. Gomberg