IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GINA WHITMORE,                                )
                                              )
                    Plaintiff,                )
                                              )    Case No.  20-cv-1732
            v.                                )
                                              )    Judge Manish S. Shah
WHEATON VILLAGE NURSING AND                   )    Magistrate Gabriel Fuentes
REHABILITATION CENTER, LLC.,                  )
                                              )
                    Defendant.                )

## PLAINTIFF'S LOCAL RULE 56.1(b)(3) RESPONSE TO FACTS AND STATEMENT OF ADDITIONAL FACTS IN OPPOSITION TO DEFENDANT'SMOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, GINA WHITMORE, by and through her attorneys, Barry A. Gomberg and Luanne M. Galovich of Barry A. Gomberg & Associates, Ltd., submits the following response and statement of additional facts supporting denial of Defendant's Motion for Summary Judgment as follows:

### Response to Defendant's Statements of Facts

**A. The Parties and Plaintiff Whitmore's Employment at Wheaton Village**

1. Wheaton Village is a long-term care and skilled nursing facility that houses both 24-hour patients who require long-term care, as well as residents on a short-term basis who are there for rehabilitation purposes upon discharge from a hospital. *See* **Exhibit 1**, Deposition Transcript of Melanie Tabieros ("Tabieros Tr.") at 11:18 – 12:11.

**RESPONSE**: **Admit**.

2. On March 26, 2018, Wheaton Village hired Plaintiff Gina Whitmore ("Whitmore" or "Plaintiff") as a dietary manager, a position that she held throughout the duration of her employment at Wheaton Village. *See* **Exhibit 2**, Deposition Transcript of Gina Whitmore ("Whitmore Tr.") at 15:6-7; *see also* **Exhibit 5**, Declaration of Melanie Tabieros in Support of Motion for Summary Judgment ("Tabieros Dec.") at Ex. B.

**RESPONSE**: **Admit**.

3. As dietary manager, Whitmore was responsible for the food service function at Wheaton Village, including being responsible for operating and running the kitchen and dining facilities at Wheaton Village, including ensuring that meals were prepared for Wheaton Village's residents. *See* Tabieros Dec. at ¶ 6.

**RESPONSE**: **Admit**.

4. At all times, Whitmore was an at-will employee of Wheaton Village. *See* Tabieros Dec. Ex. A at p. WHITMORE 0034; Tabieros Tr. 160:2-4.

**RESPONSE**: **Admit**.

5. Whitmore is an African-American woman. Whitmore Tr. 8:17-19.

**RESPONSE**: **Admit**.

6. Whitmore was born on August 26, 1968. Whitmore Tr. 8:12-16.

**RESPONSE**: **Admit**.

7. Wheaton Village's former Administrator, David Taylor, interviewed Whitmore and made the decision to hire her. Whitmore Tr. 11:16 – 12:3; **Exhibit 3**, Deposition Transcript of David Taylor ("Taylor Tr.") at 59:4-12; Tabieros Dec. at ¶ 5.

**RESPONSE**: **Admit**.

8. At all times during the course of her employment, Ms. Whitmore reported to Taylor. Whitmore Tr. 11:16 – 12:3; Tabieros Dec. at ¶ 5.

**RESPONSE**: **Admit**.

9. During the course of her employment, Whitmore received pay raises, which Taylor made the decision to provide. Whitmore Tr. 68:11-13; Tabieros Dec. Ex. C.

**RESPONSE**: **Admit**.

10. Taylor was born on June 23, 1953. *See* Taylor Tr. 12:6-8.

**RESPONSE**: **Admit**.

11. At all relevant times, Melanie Tabieros served as Wheaton Village's Human Resources Coordinator. *See* Tabieros Tr. 14:9-24; Tabieros Dec. at ¶¶ 1-3.

**RESPONSE**:  **Deny.  Tabieros was not in Human Resources Coordinator when Plaintiff was**

**hired in March 2018.  Casey was HR Coordinator through January 2019.  (Ex. B - Tabieros**

**Dep. p. 31:14-15; 32:9)**

12. Wheaton Village maintains a Human Resources policy manual that was in effect at all times during the course of Ms. Whitmore's employment. *See* Tabieros Dec. ¶ 3, Ex. A.

**RESPONSE**:  **Plaintiff has no knowledge and can neither admit nor deny this statement.  See**

**Whitmore Dep Exhibit H for 2018 Handbook receipt. Plaintiff never received a copy of the**

**revised 2019 Handbook. (Ex. A - Whitmore Dep. p.; Ex. B - Tabieros  Dep. p, 31:14-15).**

13. The Human Resources manual that was in effect contains a corrective action procedure which states in relevant part: "depending on the seriousness of the issue, any of the steps may be bypassed and your employment may be immediately terminated." *See* Tabieros Dec. Ex. A at p. WHITMORE 0056 - 0057; *see also* Tabieros Tr. 169:10-23.

**RESPONSE**:  **Plaintiff has no knowledge and can neither admit nor deny this statement.**

**Plaintiff was aware that she was an at will employee, but also understood corrective action**

**steps to be in place for all workers.  (Ex. A - Whitmore Dep. pp. 57;24-58:7)**

14. The corrective action procedure further states, "Remember that the relationship between the company and the employee is at will and that the relationship may be terminated by either party at any time without notice or cause." *See* Tabieros Dec. Ex. A at p. WHITMORE 0056 - 0057; *see also* Tabieros Tr. 169:10-23

**RESPONSE**:  **Plaintiff has no knowledge and can neither admit nor deny this statement.**

**Plaintiff understood that even an "at will" employee would be subject to the Corrective Action**

**plan. At the time of her hire, David Taylor told Plaintiff that "if he had any problems, he would**

**call her into his office to discuss."  (Ex. A - Whitmore Dep. 57:8 - 59:20)**

15. The Employee Manual further contains an equal employment opportunity policy prohibiting against discrimination and harassment, which states in relevant part:

Our Company has a long-standing record of nondiscrimination in employment and opportunity because of race, color, religion, creed, national origin, ancestry, disability, sex or age. The Governing Body has issued the following policy stating the Company's views in this matter:

It is the policy of our Company to:

• strictly follow personnel procedures that will ensure equal opportunity for all people without regard to race, color, religion, creed, national origin, sex, age, ancestry, marital status, disability, veteran or draft status; comply with all the relevant and applicable provisions of the Americans with Disabilities Act ("ADA"). Our Company will not discriminate against any qualified employee or job applicant with respect to any terms, privileges, or conditions of employment because of a person's physical or mental disability.

• make reasonable accommodations wherever necessary for all employees or applicants with disabilities, provided that the individual is otherwise qualified to safely perform the duties and assignments connected with the job and provided that any accommodations made do not require significant difficulty or expense.

• achieve understanding and acceptance of our Company's policy on Equal Employment Opportunity by all employees and by the communities in which the company operates;

• thoroughly investigate instances of alleged discrimination and take corrective action if warranted;

• be continually alert to identify and correct any practices by individuals that are at variance with the intent of the Equal Employment Opportunity Policy.

At this time, our Company would like to reaffirm this policy and call upon all personnel to effectively pursue the policy as stated. *See* Tabieros Dec. Ex. A at p. WHITMORE 0050 – 0051.

**RESPONSE**:  **Admit that this is Defendant's purported policy but deny that anything was given to Whitmore as to the 2019 policy.  See Whitmore Dep Exhibit H for 2018 Handbook receipt. Plaintiff never received a copy of the revised 2019 Handbook. (Ex. B - Tabieros  Dep. p, 31:14-15).**

16. Whitmore acknowledged these policies and signed an Acknowledgement of the Facility Code of Conduct. *See* Tabieros Dec. Ex. A at p. WHITMORE 0095.

**RESPONSE**:  **Plaintiff has no knowledge and can neither admit nor deny this statement.  See Whitmore Dep Exhibit H for 2018 Handbook receipt. Plaintiff never received a copy of the**

revised 2019 Handbook. (Ex. A - Whitmore Dep. p.; Ex. B - Tabieros  Dep. p, 31:14-15).

## B. Other Employees Complained about Whitmore

17. During Whitmore's employment, other long-term employees complained about Whitmore and her management style, including threatening to quit if Wheaton Village did not terminate Whitmore. *See* Tabieros Tr. 182:5 – 183:1; Taylor Tr. 32:11-19, 44:7-14, 143:2-12; Tabieros Dec. at Exs. D, E.

**RESPONSE: Deny.  Defendant is being disingenuous with the Court.  Guzman and Gonzalez were the only employees to complain to Human Resources as indicated by Defendant per Defendant's comments in Plaintiff's personnel file.  (Ex. K – Def. 000272-000273)  The complaints of Guzman and Gonzalez were the only complaints Taylor claims to have received about Plaintiff.  (Ex. C - Taylor Dep. p. 36:8-18).**

18. Specifically, in the Summer of 2019, Maria Gonzalez and Guadalupe Guzman came to Tabieros and complained about Whitmore and her management style, including that Whitmore was abusive to employees and maintained unreasonable expectations. Tabieros Tr. 96:6-10; Tabieros Dec. ¶¶ 8-9.

**RESPONSE: Deny.  Guzman and Gonzales did not complain about Whitmore being abusive. Gonzalez and Guzman stated that they complained to HR because Plaintiff told them that they had to make the frosting for the cake. (Ex. K – Def. 000272-000273)  Plaintiff had to follow the rules and recipes of the Illinois Department of Public Health (IDPH) when preparing food for the residents so her expectations were not unreasonable.  (Ex. A - Whitmore Dep. p. 18:21-19-1-9)  Furthermore, Gonzalez and Guzman's complaints centered around being understaffed, not about Plaintiff being abusive.  (Ex. K – Def. 000272-000273)**

**Although Gonzalez claimed that Plaintiff "screamed" at her, she said it was just like raising your voice. (Ex. E - Gonzalez Dep. p. 89)  The only difference is that you "scream" when you are mad and "yell" when you don't intend to raise your voice.  Both constituted raising your voice.  Gonzalez also admitted that Plaintiff did not use curse words at work.  (Ex. E -**

Gonzalez Dep. p. 110:6-10). Gonzalez testified that Plaintiff was friendly and that she could go to her with any concern. (Ex. E - Gonzalez Dep. p. 112). She also believed that Plaintiff was trying to do a good job at work. (Ex. E - Gonzalez p. 133).

Taylor testified that he visited 8 of 12 of the departments at Defendant on a daily basis at all relevant times. When Taylor was walking through the Dietary Department, he did not recall hearing Plaintiff or anyone else raising their voices. (Ex. C - Taylor Dep. 87:12-20). According to Taylor, everybody raises their voice at Defendant because it is how they get heard. (Ex. C - Taylor Dep. p. 102:4-17). However, Taylor could not recall if he ever discharged anyone but Plaintiff for raising her voice. (Ex. C - Taylor Dep. p. 102:18-24). In any event, with the number of times he walked through Dietary, he never came across Plaintiff acting inappropriately towards her staff.

As for raising her voice, Taylor said everyone raised voice. (Ex. C - Taylor Dep. p. 102:4-17). That was how you got heard at Defendant. (Id.)

Furthermore, Guzman and Gonzalez's written complaints do not reflect "abuse" or unreasonable expectations by Plaintiff. (Ex. K – Def. 000272-000273) Gonzalez testified that she believed that Plaintiff was trying to do a good job at work. (Ex. E - Gonzalez p. 133).

19. Both women informed Tabieros that they were being unjustly reprimanded for things that they did not do. Tabieros Tr. 53:9 – 54:21, 95:16 – 96:10.

**RESPONSE**: Deny that Plaintiff was unjustly reprimanding Guzman and Gonzalez for things they did not do. Plaintiff had to follow the rules and recipes of the Illinois Department of Public Health (IDPH) when preparing food for the residents so her expectations were not unreasonable. (Ex. A - Whitmore Dep. p. 18:21-19:9) Furthermore, Gonzalez and Guzman's complaints centered around being understaffed and overworked, not about Plaintiff being abusive. (Ex. K – Def. 000272-000273)

20. Guzman was a cook and Gonzalez was a dietary aide, and they both reported to Whitmore. Tabieros Tr. 40:3-10.

**RESPONSE**: **Admit**.

21. Tabieros informed Taylor about Gonzalez's and Guzman's complaints. Tabieros Tr. 103:2 – 105:12; Taylor Tr. 32:11 – 34:11; Tabieros Dec. ¶¶ 12-14.

**RESPONSE: Plaintiff does not have enough knowledge admit or deny. Guzman never informed Tabieros that she was quitting or thinking of quitting. (Ex. D - Guzman Dep. p. 65:6-20, 66:15-21). There is no definitive evidence that Gonzalez informed Tabieros that was quitting or thinking of quitting. (Ex. E - Gonzalez Dep. p. 121:4-8). They complained about being short-staffed and being overworked. (Ex. K – Def. 000272-000273)**

**Deny that Guzman had a problem with the way Plaintiff was communicating with her. (Ex. D - Guzman Dep. p. 71:4-10)**

22. On or about August 6, 2019, Guzman and Gonzalez again went to Tabieros to complain about Whitmore a second time. *See* Tabieros Tr. 50-53; Tabieros Dec. ¶¶ 9-14.

**RESPONSE**: **Deny that Guzman went to HR more than once. Guzman claimed that she only went to HR to complain once. (Ex. D - Guzman Dep. p. 34:15-18; 37:5-7). Further, Gonzalez claims to have gone to HR three times, not twice. (Ex. E - Gonzalez Dep. p. 103:12-14)**

23. At the August 6, 2019 meeting, Guzman and Gonzalez made similar complaints about Whitmore's management style and that Whitmore had mistreated them. Tabieros Tr. 96:6- 10, 103:2 – 105:12; Tabieros Dec. ¶¶ 8-9.

**RESPONSE**: **Deny. Guzman and Gonzales did not complain about Whitmore being abusive. Gonzalez and Guzman stated that they complained to HR because Plaintiff told them that they had to make the frosting for the cake. (Ex. K – Def. 000272-000273) Plaintiff had to follow the rules and recipes of the Illinois Department of Public Health (IDPH) when preparing food for**

the residents so her expectations were not unreasonable. (Ex. A - Whitmore Dep. p. 18:21-19-1-9) Furthermore, Gonzalez and Guzman's complaints centered around being understaffed, not about Plaintiff being abusive. (Ex. K – Def. 000272-000273)

Although Gonzalez claimed that Plaintiff "screamed" at her, she said it was just like raising your voice. (Ex. E - Gonzalez Dep. p. 89) The only difference is that you "scream" when you are mad and "yell" when you don't intend to raise your voice. Both constituted raising your voice. Gonzalez also admitted that Plaintiff did not use curse words at work. (Ex. E - Gonzalez Dep. p. 110:6-10). Gonzalez testified that Plaintiff was friendly and that she could go to her with any concern. (Ex. E - Gonzalez Dep. p. 112). She also believed that Plaintiff was trying to do a good job at work. (Ex. E - Gonzalez p. 133).

Taylor testified that he visited 8 of 12 of the departments at Defendant on a daily basis at all relevant times. When Taylor was walking through the Dietary Department, he did not recall hearing Plaintiff or anyone else raising their voices. (Ex. C - Taylor Dep. 87:12-20). According to Taylor, everybody raises their voice at Defendant because it is how they get heard. (Ex. C - Taylor Dep. p. 102:4-17). However, Taylor could not recall if he ever discharged anyone but Plaintiff for raising her voice. (Ex. C - Taylor Dep. p. 102:18-24). In any event, with the number of times he walked through Dietary, he never came across Plaintiff acting inappropriately towards her staff.

As for raising her voice, Taylor said everyone raised voice. (Ex. C - Taylor Dep. p. 102:4-17). That was how you got heard at Defendant. (Id.)

Furthermore, Guzman and Gonzalez's written complaints do not reflect "abuse" or unreasonable expectations by Plaintiff. (Ex. K – Def. 000272-000273) Gonzalez testified that she believed that Plaintiff was trying to do a good job at work. (Ex. E - Gonzalez p. 133).

24. Tabieros informed Taylor of Guzman's and Gonzalez's additional complaints. Tabieros Tr. 54:3-21, 103:2 – 105:12.

8

**RESPONSE:  Plaintiff does not have enough knowledge regarding what Tabieros allegedly said. Deny that Plaintiff was abusive.  Guzman and Gonzales did not complain about Whitmore being abusive.  Gonzalez and Guzman stated that they complained to HR because Plaintiff told them that they had to make the frosting for the cake. (Ex. K – Def. 000272-000273)   Plaintiff had to follow the rules and recipes of the Illinois Department of Public Health (IDPH) when preparing food for the residents so her expectations were not unreasonable.  (Ex. A - Whitmore Dep. p. 18:21-19-1-9)  Furthermore, Gonzalez and Guzman's complaints centered around being understaffed, not about Plaintiff being abusive.  (Ex. K – Def. 000272-000273)**

**Although Gonzalez claimed that Plaintiff "screamed" at her, she said it was just like raising your voice. (Ex. E - Gonzalez Dep. p. 89)  The only difference is that you "scream" when you are mad and "yell" when you don't intend to raise your voice.  Both constituted raising your voice.  Gonzalez also admitted that Plaintiff did not use curse words at work.  (Ex. E - Gonzalez Dep. p. 110:6-10). Gonzalez testified that Plaintiff was friendly and that she could go to her with any concern.   (Ex. E - Gonzalez Dep. p. 112). She also believed that Plaintiff was trying to do a good job at work.  (Ex. E - Gonzalez p. 133).**

**Taylor testified that he visited 8 of 12 of the departments at Defendant on a daily basis at all relevant times.  When Taylor was walking through the Dietary Department, he did not recall hearing Plaintiff or anyone else raising their voices.  (Ex. C - Taylor Dep.  87:12-20). According to Taylor, everybody raises their voice at Defendant because it is how they get heard. (Ex. C - Taylor Dep. p. 102:4-17). However, Taylor could not recall if he ever discharged anyone but Plaintiff for raising her voice. (Ex. C - Taylor Dep. p. 102:18-24).  In any event, with the number of times he walked through Dietary, he never came across Plaintiff acting inappropriately towards her staff.**

**As for raising her voice, Taylor said everyone raised voice. (Ex. C - Taylor Dep. p. 102:4-17). That was how you got heard at Defendant. (Id.)**

**Furthermore, Guzman and Gonzalez's written complaints do not reflect "abuse" or unreasonable expectations by Plaintiff. (Ex. K – Def. 000272-000273) Gonzalez testified that she believed that Plaintiff was trying to do a good job at work. (Ex. E - Gonzalez p. 133).**

25. When Gonzalez and Guzman went to complain the second time, Tabieros saw that they were hysterical and crying. Tabieros Tr. 96:6-10.

**RESPONSE**:  **Deny that Guzman went to HR more than once.  Guzman claimed that she only went to HR to complain once. (Ex. D - Guzman Dep. p. 34:15-18; 37:5-7).  Further, Gonzalez claims to have gone to HR three times, not twice. (Ex. E - Gonzalez Dep. p. 103:12-14). Neither Guzman nor Gonzalez testified in their depositions that they were "hysterical." (Ex. D – Guzman Full Dep.; Ex. E - Gonzalez Full Dep.)**

26.     Guzman and Gonzalez submitted written complaints to Tabieros about Whitmore. Tabieros Tr. at 104:1-18.

**RESPONSE:  Admit that Guzman submitted written complaints but deny that they were about Whitmore.  The written complaints were about being short-staffed and overworked on the job. (Ex. K – Def. 000272-000273). Gonzalez even concedes in her "complaint" that Plaintiff "wants all well."  (Id.)**

28. In her August 6, 2019 written complaint, Gonzalez wrote:

Today Lupe in me the only work in is supposed y in Gina come to the kitchen in scream to us bc us not make the frost for the cake in us said ok you know us short in not help. Find I tell Lupe last talk with Melani bc all day us don't take a break or eat nothing in us really tired about always short ppl in she always come in see if us make everything for breakfast or lunch. She never come to say ok let me help in this why us desire to talk in us always make the dinner for her in always say her do everything in us nothing. She always stress us self. Tabieros Dec. at Ex. D.

**RESPONSE**: **Admit**.

29. In her August 6, 2019 written complaint, Guzman wrote:

Today we're short we made everything like if are working four people. But Gina make me stressed because she wants all well, and we're not have chance to do everything and the same time these not the first time we are working like that I'm not in good mood. Finally Maria and me we went to Melanie I said I'm tired Gina didn't doing her job and she wants we do all the work. She always make us work like if is full personnel and us only 2. Tabieros Dec. at Ex. E.

**RESPONSE**: **Admit**.

30. Tabieros informed Taylor that Guzman and Gonzalez had complained about Whitmore and that they were threatening to quit if Wheaton Village did not terminate Whitmore and gave him the written complaints referenced above. *See* Tabieros Tr. 126:4-9; Taylor Tr. 32:11- 19, 44:7-14, 143:2 -144:22; Tabieros Dec. at ¶¶ 8-14.

**RESPONSE**: **Deny. Guzman never informed Tabieros that she was quitting or thinking of quitting. (Ex. D - Guzman Dep. p. 65:6-20, 66:15-21). There is no definitive evidence that Gonzalez informed Tabieros that was quitting or thinking of quitting. (Ex. E - Gonzalez Dep. p. 121:4-8).**

**Additionally, both Guzman and Gonzalez submitted written complaints to Tabieros and neither complaint references an intent to quit by either Guzman or Gonzalez. (Ex. K – Def. 000272-000273)**

31. Based on the complaints of these long-term employees, Wheaton Village made the decision to terminate Whitmore in order to prevent Guzman and Gonzalez from quitting. Taylor Tr. 32:11-19, 44:7-14, 143:2-12.

**RESPONSE**: **Deny. Plaintiff was terminated because of her race. Plaintiff claims that both Taylor and Tabieros made discriminatory comments about black employees not reporting for work as scheduled. Plaintiff is African American and Taylor stated, "that's what black people do, call off." She's black and she believed that Taylor was referring to her too. (Ex. A - Whitmore Dep. pp. 129:5-130:4). Additionally, during approximately two meetings when other**

11

African American manager took off work, Tabieros would say "Oh, your sisters called off again. Black people call off all the time." (Ex. A - Whitmore Dep. pp. 21:22-22:16)

Furthermore, Guzman never informed Tabieros that she was quitting or thinking of quitting. (Ex. D - Guzman Dep. p. 65:6-20, 66:15-21). There is no definitive evidence that Gonzalez informed Tabieros that was quitting or thinking of quitting. (Ex. E - Gonzalez Dep. p. 121:4-8). They complained about being short-staffed and being overworked. (Ex. K – Def. 000272-000273)

Taylor admitted that he lied and never told Plaintiff about the complaints against her and that she was being terminated for "no cause." (Ex. C - Taylor Dep. p. 108:20-109:18, 135:17-22)

Further, neither Whitmore nor Tabieros were informed that Taylor claims that he terminated Plaintiff because people threatened to quit and/or because of Plaintiff's "demeanor." Plaintiff was informed that she was being terminated for "no cause." (Ex. A - Whitmore Dep. pp. 44:15-45:13; Ex. B - Tabieros Dep.. p. 34:19-35:15) Taylor also admitted that he never told Tabieros that the reason he was terminating Plaintiff was because of Guzman and Gonzalez. (Ex. C - Taylor Dep. p. 147:5-24).

Additionally, Taylor testified that he did not know that Guzman and Gonzalez were looking for another job. (Ex. C - Taylor Dep. p. 116:5-7). Guzman and Gonzalez said they were not looking for another job. Finally, both Guzman and Gonzalez submitted written complaints to Tabieros and neither complaint references an intent to quit by either Guzman or Gonzalez. (Ex. K – Def. 000272-000273)

32. Taylor made the decision to terminate Ms. Whitmore's employment because he "had complaints from her staff that they were threatening to quit." Taylor Tr. 32:11-17.

**RESPONSE**: Deny.  Plaintiff was terminated because of her race.  Plaintiff claims that both Taylor and Tabieros made discriminatory comments about black employees not reporting for work as scheduled.  Plaintiff is African American and Taylor stated, "that's what black people do, call off."  She's black and she believed that Taylor was referring to her too.  (Ex. A - Whitmore Dep. pp. 129:5-130:4). Additionally, during approximately two meetings when other African American manager took off work, Tabieros would say "Oh, your sisters called off again.  Black people call off all the time."  (Ex. A - Whitmore Dep. pp. 21:22-22:16)

Furthermore, Guzman never informed Tabieros that she was quitting or thinking of quitting. (Ex. D - Guzman Dep. p. 65:6-20, 66:15-21). There is no definitive evidence that Gonzalez informed Tabieros that was quitting or thinking of quitting.  (Ex. E - Gonzalez Dep. p. 121:4-8). They complained about being short-staffed and being overworked.  (Ex. K – Def. 000272-000273)

Taylor admitted that he lied and never told Plaintiff about the complaints against her and that she was being terminated for "no cause."  (Ex. C - Taylor Dep. p. 108:20-109:18, 135:17-22)

Further, neither Whitmore nor Tabieros were informed that Taylor claims that he terminated Plaintiff because people threatened to quit and/or because of Plaintiff's "demeanor."  Plaintiff was informed that she was being terminated for "no cause."  (Ex. A - Whitmore Dep. pp. 44:15-45:13; Ex. B - Tabieros Dep.. p. 34:19-35:15) Taylor also admitted that he never told Tabieros that the reason he was terminating Plaintiff was because of Guzman and Gonzalez. (Ex. C - Taylor Dep. p. 147:5-24).

Additionally, Taylor testified that he did not know that Guzman and Gonzalez were looking for another job. (Ex. C - Taylor Dep. p.  116:5-7).  Guzman and Gonzalez said they were

**not looking for another job. Finally, both Guzman and Gonzalez submitted written complaints to Tabieros and neither complaint references an intent to quit by either Guzman or Gonzalez. (Ex. K – Def. 000272-000273)**

33. Taylor testified that he made the decision to terminate Whitmore "because they were ready to walk out the door. They had already registered their grievance with our grievance department, which was HR, and [he] had to move quickly." Taylor Tr. 34:12-19.

**<u>RESPONSE</u>: Deny. Plaintiff was terminated because of her race. Plaintiff claims that both Taylor and Tabieros made discriminatory comments about black employees not reporting for work as scheduled. Plaintiff is African American and Taylor stated, "that's what black people do, call off." She's black and she believed that Taylor was referring to her too. (Ex. A - Whitmore Dep. pp. 129:5-130:4). Additionally, during approximately two meetings when other African American manager took off work, Tabieros would say "Oh, your sisters called off again. Black people call off all the time." (Ex. A - Whitmore Dep. pp. 21:22-22:16)**

**Furthermore, Guzman never informed Tabieros that she was quitting or thinking of quitting. (Ex. D - Guzman Dep. p. 65:6-20, 66:15-21). There is no definitive evidence that Gonzalez informed Tabieros that was quitting or thinking of quitting. (Ex. E - Gonzalez Dep. p. 121:4-8). They complained about being short-staffed and being overworked. (Ex. K – Def. 000272-000273)**

**Taylor admitted that he lied and never told Plaintiff about the complaints against her and that she was being terminated for "no cause." (Ex. C - Taylor Dep. p. 108:20-109:18, 135:17-22)**

**Further, neither Whitmore nor Tabieros were informed that Taylor claims that he terminated Plaintiff because people threatened to quit and/or because of Plaintiff's "demeanor." Plaintiff was informed that she was being terminated for "no cause." (Ex. A -**

**Whitmore Dep. pp. 44:15-45:13; Ex. B - Tabieros Dep.. p. 34:19-35:15) Taylor also admitted that he never told Tabieros that the reason he was terminating Plaintiff was because of Guzman and Gonzalez. (Ex. C - Taylor Dep. p. 147:5-24).**

**Additionally, Taylor testified that he did not know that Guzman and Gonzalez were looking for another job. (Ex. C - Taylor Dep. p. 116:5-7). Guzman and Gonzalez said they were not looking for another job. Finally, both Guzman and Gonzalez submitted written complaints to Tabieros and neither complaint references an intent to quit by either Guzman or Gonzalez. (Ex. K – Def. 000272-000273)**

34. On September 23, 2019, Tabieros wrote a summary describing the basis for the decision to terminate Whitmore and the complaints that Gonzales and Guzman made, in which she wrote:

On August 6, 2019, Maria Vaca Gonzalez and Guadalupe Guzman came looking for me and reported that they are about to quit and walk out the door because of the way their supervisor, Gina Whitmore, was handling things. I tried to calm them down and asked what their concerns were. They stated that they were working short that day like most of the days and yet Gina kept reprimanding them on little things that they forgot to do. They stated that they have been working for almost 8 hours without break and the least they needed was the attitude from their supervisor.

Guadalupe has been a cook in the facility for 10 years and Maria has worked with her since 2014. I have known Guadalupe to be a quiet person who minds her own business, but knows her craft. Maria on the other hand is more outgoing and verbal with her feelings, but is as hard working as Guadalupe, working even when in pain because she hates to leave a co-worker alone. I have been working in the facility for ten years now and I have known them to be very patient and has never heard them complain to management about any of their supervisors, which made me think that they were under so much pressure and stress when they came to see me almost in tears that day. This scenario was witnessed by one of the owner's, David M., and he promised the two employees that management will look into the issue in order to resolve it immediately. Tabieros Dec. at Ex. G.

**RESPONSE**: **Admit that Tabieros wrote her "summary" on September 23, 2019, approximately 35 days Plaintiff's termination, but deny that Tabieros was aware of the reason put forth by Defendant and David Taylor for Plaintiff's termination. (Ex. B - Tabieros Dep. p. 34;19-35:15). According to Tabierios, she never came to know the reason for Plaintiff's**

termination. **(Ex. B - Tabieros Dep. p. 36:24-37:4). Tabieros completed Plaintiff's Termination forms and did not indicate that Plaintiff was breaking any policy of Defendant or being terminated for anything other than for "no cause." (Ex. I – Def. 0002666; Ex. J – Def. 000267-000268)**

35. Tabieros believed that Guzman and Gonzalez were going to quit because they told her that they were going to "walk out" or "leave the building." Tabieros Tr. 182:2 – 183:1; Tabieros Dec. at ¶¶ 8-15.

**RESPONSE**: **Deny.  Guzman never informed Tabieros that she was quitting or thinking of quitting. (Ex. D - Guzman Dep. p. 65:6-20, 66:15-21). There is no definitive evidence that Gonzalez informed Tabieros that was quitting or thinking of quitting.  (Ex. E - Gonzalez Dep. p. 121:4-8).**

**Additionally, both Guzman and Gonzalez submitted written complaints to Tabieros and neither complaint references an intent to quit by either Guzman or Gonzalez.  (Ex. K – Def. 000272-000273)**

**C. The Alleged Discriminatory Comments**

36. Whitmore claims that, on three or four occasions, when Whitmore noted to Taylor that an employee had taken off, Taylor responded "that's what black people do." Whitmore Tr. 12:14 – 15:1.

**RESPONSE**: **Admit.**

37. Whitmore did not understand what Taylor meant by these comments. Whitmore Tr. 130:5-8.

**RESPONSE**: **Admit that Plaintiff testified that she did not know what Taylor meant by that statement because he did not explain it to her but she also clarified that she's black.  She's**

**African American and Taylor stated "that's what black people do, call off." She's black and**

**she believed that Taylor was referring to her too. (Ex. A - Whitmore Dep. pp. 129:5-130:4)**

38. Whitmore testified that "maybe twice or so," Tabieros made a comment concerning Black women taking off of work. Whitmore Tr. 21:20 – 22:19.

**RESPONSE**: **Admit. During meetings when other African American manager took off work,**

**Tabieros would say "Oh, your sisters called off again. Black people call off all the time." (Ex. A -**

**Whitmore Dep. pp. 21:22-22:16)**

39. Whitmore testified that Taylor did not make any other statements related to race during the course of her employment. Whitmore Tr. 15:17.

**RESPONSE**: **Admit**.

40. According to Whitmore, the comments she asserts that Taylor made were made about other employees, and not Whitmore herself, and Whitmore testified that she herself did not call off of work. Whitmore Tr. 12:14 – 14:17, 114:12-13.

**RESPONSE**: **Deny. Although Taylor's statements appeared to be discussing other employees,**

**he was generally referencing African American/Black employees, a class to which Whitmore**

**also belonged. As stated by Plaintiff, Taylor "used to say, 'black people call off.' So I'm black,**

**so I took it as he was referring to me, too, because I am an African American." (Ex. A -**

**Whitmore Dep. p. 129:21-24)**

41. Whitmore never reported to HR that Taylor allegedly made these comments. Whitmore Tr. 15:18-20, 21:8-12.

**RESPONSE**: **Admit**.

42. Whitmore never reported these alleged comments to anyone at Wheaton Village. Whitmore Tr. 15:23 – 16:1, 21:8-12, 39:4-7.

**RESPONSE**: **Admit**.

43. Whitmore testified that one of the individuals who witnessed alleged discrimination was a co-worker Luvenia Pipes. Whitmore Tr. 40:21 – 41:8, 52:17-24.

**RESPONSE**:  **Deny.  Plaintiff's testimony on the cited pages does not say that Pipes observed Plaintiff being discriminated against.  (Ex. A - Whitmore Dep. pp. 40:21-41:8; 52:17-24).  It only states that Plaintiff talked to Pipes.**

44. According to Pipes, Whitmore never discussed any alleged discriminatory conduct with Pipes. *See* **Exbibit 4** Deposition Transcript of Luvenia Pipes ("Pipes Tr.") at 45:19 – 49: 4.

**RESPONSE**:  **Admit**.

45. Whitmore acknowledged that she never complained about these comments to Pipes. Whitmore Tr. 53:9-11.

**RESPONSE**:  **Admit**.

45.[sic] Pipes testified that she never witnessed or heard Taylor or Tabieros or anyone else make any racist or discriminatory comments to Whitmore, Pipes or anyone else. Pipes Tr. 45:19 – 49: 4.

**RESPONSE**:  **Admit.  However, when Pipes complained to Defendant about her treatment by Plaintiff's successor, Rafael Rivera, Defendant ignored her complaints and she decided to no longer act as a full time cook in the Dietary Department but became a part-time worker in 2020. (Ex. G - Pipes Dep. p. 11)**

**D. Age Discrimination Claims**

46. When asked the basis for her claim of age discrimination, Whitmore testified, "I'm 52 years old, and when I got the documentation as far as the paperwork, the person they replaced me I think he was born in 1971." Whitmore Tr. 24:15-21.

**RESPONSE**:  **Admit**.

47. When asked for any further basis about her age discrimination claim, Whitmore testified, "Pretty much that the person was younger than me, and pretty much that's what age discrimination means, that he's younger than me." Whitmore Tr. 26:2-8.

**RESPONSE**:  **Admit**.

48. No one at Wheaton Village ever made any age-based comments towards Plaintiff. Whitmore Tr. 26:10-12.

**RESPONSE**:  **Admit**.

49. Whitmore never complained about anyone at Wheaton Village making age-based comments towards her. Whitmore Tr. 26:2-12

**RESPONSE**:  **Admit**.

**E. Ms. Whitmore's Termination**

50. Wheaton Village terminated Ms. Whitmore's employment on August 18, 2019. Whitmore Tr. 15:8-10; *see also* Tabieros Dec. at Ex. F.

 **RESPONSE**:  **Deny.  Plaintiff was terminated on Monday, August 19, 2019.  (Ex. A - Whitmore Dep. pp. 17:18-18:7; 45:13-20.**

51. Taylor, who hired Whitmore, was the individual who made the decision to terminate Whitmore. Tabieros Tr. 34:2-13; Taylor Tr. 32:11-19, 147:21 – 148:2.

**RESPONSE**:  **Admit**.

52. Taylor testified he decided to terminate Whitmore's employment because he had received word from Tabieros that Guzman and Garcia were threatening to quit their jobs if Whitmore remained their supervisor. Taylor Tr. 32:11-19.

**RESPONSE**:  **Deny.  Guzman never informed Tabieros that she was quitting or thinking of quitting. (Ex. D - Guzman Dep. p. 65:6-20, 66:15-21).  There is no definitive evidence that Gonzalez informed Tabieros that was quitting or thinking of quitting.  (Ex. E - Gonzalez Dep. p. 121:4-8).  Taylor testified that he did not know that Guzman and Gonzalez were looking for another job. (Ex. C - Taylor Dep. p.  116:5-7)**

**Additionally, both Guzman and Gonzalez submitted written complaints to Tabieros and neither complaint references an intent to quit by either Guzman or Gonzalez.  (Ex. K – Def. 000272-000273)**

53. At the time of the termination, Taylor informed Whitmore that they "had people that were ready to quit, ready to quit because of [her] and [her] demeanor." Taylor Tr. 44:7-14.

**RESPONSE**:  Deny.  Neither Whitmore nor Tabieros were informed that Taylor claims that he terminated Plaintiff because people threatened to quit and/or because of Plaintiff's "demeanor."  Plaintiff was informed that she was being terminated for "no cause."  (Ex. A - Whitmore Dep. pp. 44:15-45:13; Ex. B - Tabieros Dep. p. 34:19-35:15) Taylor also admitted that he never told Tabieros that the reason he was terminating Plaintiff was because of Guzman and Gonzalez. (Ex. C - Taylor Dep. p. 147:5-24). Further, Taylor testified that he did not know that Guzman and Gonzalez were looking for another job. (Ex. C - Taylor Dep. p.  116:5-7)

54. Tabieros believed the only reason that Whitmore was terminated was because of complaints made by Guzman and Gonzalez. Tabieros Tr. 38:21 – 39:2.

**RESPONSE**:  Deny.  Tabieros testified that she never came to know the reason why Taylor terminated Plaintiff.  (Ex. B - Tabieros Dep. pp. 36:24-37:4)

55. Wheaton Village made the decision to terminate Ms. Whitmore's employment because two long-term employees were threatening to quit if she remained employed. *See* Taylor Tr. 32:11-19; Tabieros Dec. Exs. D, E, G.

**RESPONSE**:  Deny.  Plaintiff was terminated because of her race.  Plaintiff claims that both Taylor and Tabieros made discriminatory comments about black employees not reporting for work as scheduled.  Plaintiff is African American and Taylor stated, "that's what black people do, call off."  She's black and she believed that Taylor was referring to her too.  (Ex. A - Whitmore Dep. pp. 129:5-130:4). Additionally, during approximately two meetings when other African American manager took off work, Tabieros would say "Oh, your sisters called off again.  Black people call off all the time."  (Ex. A - Whitmore Dep. pp. 21:22-22:16)

Furthermore, Guzman never informed Tabieros that she was quitting or thinking of quitting. (Ex. D - Guzman Dep. p. 65:6-20, 66:15-21). There is no definitive evidence that Gonzalez informed Tabieros that was quitting or thinking of quitting.  (Ex. E - Gonzalez Dep.

p. 121:4-8). They complained about being short-staffed and being overworked. **(Ex. K – Def. 000272-000273)**

Taylor admitted that he lied and never told Plaintiff about the complaints against her and that she was being terminated for "no cause." **(Ex. C - Taylor Dep. p. 108:20-109:18, 135:17-22)**

Further, neither Whitmore nor Tabieros were informed that Taylor claims that he terminated Plaintiff because people threatened to quit and/or because of Plaintiff's "demeanor." Plaintiff was informed that she was being terminated for "no cause." **(Ex. A - Whitmore Dep. pp. 44:15-45:13; Ex. B - Tabieros Dep.. p. 34:19-35:15)** Taylor also admitted that he never told Tabieros that the reason he was terminating Plaintiff was because of Guzman and Gonzalez. **(Ex. C - Taylor Dep. p. 147:5-24).**

Additionally, Taylor testified that he did not know that Guzman and Gonzalez were looking for another job. **(Ex. C - Taylor Dep. p. 116:5-7).** Guzman and Gonzalez said they were not looking for another job. Finally, both Guzman and Gonzalez submitted written complaints to Tabieros and neither complaint references an intent to quit by either Guzman or Gonzalez. **(Ex. K – Def. 000272-000273)**

### Statements of Additional Fact

1. Decision maker David Taylor admitted on the record that he lied to Plaintiff about the reason for Plaintiff's termination. (Ex. C - Taylor Dep. p. 108:20-109:18, 135:17-22)

2. Mr. Rivera and Luvenia Pipes (African American, CNA and former cook) claim that Mr. Rivera started working for Defendant on August 19, 2019, the same date that Plaintiff was terminated by Defendant. (Ex. F - Rivera Dep. p. 17:5-7; 67:11-12; Ex. G - Pipes Dep. p. 48:11-13) Mr. Taylor, Ms. Tabieros and Maria Gonzalez all claim that Mr. Rivera began working for Defendant either days,

weeks or months *after* Ms. Whitmore's termination. (Ex. C - Taylor Dep. p. 50:6-16, Ex. B - Tabieros Dep. pp. 83:5-12, Ex. E - Gonzalez Dep. p. 29:2-11)

3.   Plaintiff complained directly to the Administrator at Defendant, David Taylor, about the staffing shortages. (Ex. A - Whitmore Dep. p. 20:8-17; 79:1-11)

4.   Plaintiff was not permitted to hire new employees and there were no new hires by Defendant in response to the shortages in the Dietary Department during Plaintiff's tenure. (Ex. B - Tabieros Dep. p. 65:11-16)

5.   Plaintiff was replaced by a Hispanic, Rafael Rivera, who is still employed by Defendant. (Ex. F - Rivera Dep. p. 52:24-53:10; Ex. B - Tabieros Dep p. 74:4-6).

6.   Plaintiff was not the first African American to be discharged by Defendant in 2019. Plaintiff went through orientation with two other African American managers – Jatavia (last name unknown) who was a social worker and Rhonda (last name unknown) who was the Director of Nursing. (Ex. A - Whitmore Dep. p. 23:6-18)  One of them was terminated in or about February 2019 and the other in either March or April 2019.  (Ex. A - Whitmore Dep. p. 19:10-15)

7.   Plaintiff received a performance evaluation dated May 7, 2019 rating Plaintiff as "Outstanding" in her work with only a couple ratings of Above Average.  (See Def. 000075-76). In said evaluation, David Taylor specifically stated, "works when employees are unavailable.  Fills in till [sic] they return.  (Well done)."  (Ex. H - Def. 000075-76).

8.   On August 19, 2019, the date Plaintiff was terminated by Defendant, a "Termination/Resignation" form was inserted into Plaintiff's file that indicated that the "Reason for termination" was "Without cause."  (See Def. 000065). Said document was signed by both David Taylor and Melanie Tabieros in HR.  *Id.*

9. On August 23, 2019, Melanie Tabieros inserted an "Employer Response Form" into Plaintiff's file. (See Def. 000066-67). Said form indicated that the reason for Plaintiff's termination was because "Employment [was] not working out." Furthermore, in response to the question, "Did the claimant violate a known rule or policy?" Defendant inserted "No." (Def. 000066)

10. There was nothing provided to Plaintiff prior to, or at the time of her termination, that indicated that she was not meeting Defendant's legitimate performance expectations. (Def. 000065-67, Def. 000075-76)

11. Ms. Tabieros made no contemporaneous notes during the conversations she had with Ms. Guzman and Ms. Gonzalez. (Ex. B - Tabieros Dep. p. 44:22-23)

12. Ms. Gonzalez testified that she only spoke with Melanie Tabieros in HR about being shorthanded in the Dietrary Department. (Ex. E - Gonzalez Dep. p. 105:16-20). Ms. Guzman stated that she also spoke with the new owner, David Mashiach. (Ex. D - Guzman Dep. p. 39:15-40:6). Guzman never informed Tabieros that she was quitting or thinking of quitting. (Ex. D - Guzman Dep. p. 65:6-20, 66:15-21). There is no definitive evidence that Gonzalez informed Tabieros that was quitting or thinking of quitting. (Ex. E - Gonzalez Dep. p. 121:4-8)

13. No one ever told Gonzalez that they did not want to work with Plaintiff. (Ex. E - Gonzalez Dep. p. 142:18-20)

14. Gonzalez testified that Plaintiff was friendly and that she could go to her with any concern. (Ex. E - Gonzalez Dep. p. 112). She believed that Plaintiff was trying to do a good job at work. (Ex. E - Gonzalez p. 133). Tabieros testified that she did not anticipate Plaintiff being terminated and that she was surprised by the decision. (Ex. B - Tabieros Dep. p. 35:4-15)

15.     There was a policy of progressive discipline in place at Defendant.  Plaintiff was never given anything resembling a warning prior to her termination.  Taylor said it was due to "timing." (Ex. C - Taylor Dep. p. 118:17-119:1). Per Taylor, there was nothing in the Employee Handbook that said that "because of timing or because other employees are going to walk off the job that you are not allowed to provide progressive discipline or you don't have to provide progressive discipline."   (Ex. C - Taylor Dep. p. 119:14-20).

16.     Rivera was hired by Administrator David Taylor.  (Ex. F - Rivera Dep. p. 23:12-18).

17.     According to Taylor, he learned of Rafael Rivera through a personnel agency.  (Ex. C - Taylor Dep. p. 49:8-14) Per Taylor, Rivera was interviewed after Plaintiff's termination.  Taylor said that Defendant went approximately two weeks without a Dietary Manager before Rivera was hired to replace Plaintiff.  (Ex. C - Taylor Dep. p. 50:6-16).  Tabieros claimed that they put out an advertisement after Plaintiff's termination.  (Ex. B - Tabieros Dep. p. 85:2-4)

18.     According to Maria Gonzalez, approximately twice per week she complains to Rivera about being shorthanded at work.  (Ex. E - Gonzalez Dep. p. 56). She also testified that Rivera stays in his office but comes out and checks on staff during day. (Ex. F - Rivera Dep. p. 57). Gonzalez further testified that Rivera puts stock away and checks if everything is done and "that is all he does." (Ex. E - Gonzalez Dep. p. 57:8-16)

19.     Mr. Rivera (Hispanic) and Luvenia Pipes (African American) have had serious issues working together.  According to Ms. Pipes, she complained about what she believed were racist and rude comments by Mr. Rivera towards her but management disregarded her complaints.  (Ex. G - Pipes Dep. pp. 16:12-17:1, 17:16-18).  Ms. Pipes was forced to continue reporting to Rivera.  (Ex. G - Pipes Dep. p. 16:10-11)

20.     Plaintiff was offended by Taylor's statements and immediately confronted him. Plaintiff told Taylor, "I don't like when you said that, David. What do you mean by that?  I'm black, and I don't call off.  I've never called off since the time I've been here.  Only for when I had two bereavements in my family when my brothers passed." (Ex. A - Dep. p. 14:13-17)

21.     According to Plaintiff, approximately twice when other Black managers would not show up for work, Ms. Tabieros would say, "Oh, your sisters called off again.  Black people call off all the time."  (Ex. A - Whitmore Dep. pp. 21:22-22:16; 37:1-10)

22.     According to Taylor, Guzman and Gonzalez were threatening to quit because of Plaintiff.  (Ex. C - Taylor Dep. p. 32:11-23). However, Guzman testified that she did not threaten to quit. (Ex. D - Guzman Dep. p. 65:9-15). And there is no clear evidence that Gonzalez informed Tabieros that she was quitting.  (Ex. E - Gonzalez Dep. p. 121:4-8)

23.     Taylor further testified that Guzman and Gonzalez's complaints were reported verbally to him through Melanie Tabieros, and through written complaints submitted by Guzman and Gonzalez. (Ex. C - Taylor Dep. pp. 33:22-24:11). Taylor never personally spoke to Guzman or Gonzalez about their complaints. (Ex. C - Taylor Dep. 34:12-35:5; Guzman Dep. p. 66:9-14). The complaints of Guzman and Gonzalez were the only complaints Taylor claims to have received about Plaintiff.  (Ex. C - Taylor Dep. p. 36:8-18).

24.     Taylor had no reason to believe Plaintiff lied about anything.  (Ex. C - Taylor Dep. p. 90:16-24).

25.     According to Taylor, other than the complaints made by Guzman and Gonzalez, Plaintiff was doing a good job at Defendant.  (Ex. C - Taylor Dep. p. 40:14-18).

26.     Taylor testified that he never told Plaintiff that there was a problem with how she was performing her job.  (Ex. C - Taylor Dep. p. 41:11-15).  Taylor further testified that when he

terminated Whitmore that he handed her a document to sign and that all he said to her was that she was being terminated "without cause." (Ex. C - Taylor Dep. p. 135:17-22). Conversely, Taylor also claims that he informed Plaintiff about the complaints against her when he terminated her. (Ex. C - Taylor Dep. p. 41:16-21).

27.     Plaintiff denies having a conversation with Guzman, Gonzalez, Taylor and/or Tabieros regarding complaints by Guzman and/or Gonzalez. (Ex. A - Whitmore Dep. p. 127:20-24)

28.     Taylor testified in his deposition that when he stated that Whitmore was terminated without cause that it was not the truth. Ex. C - (Taylor Dep. p. 108:20-109:18) Taylor admitted that he never told Tabieros that the reason he was terminating Plaintiff was because of Guzman and Gonzalez. (Ex. C - Taylor Dep. 147:5-24).

29.     Taylor said that Tabieros knew the reason behind Plaintiff's termination because Tabieros had been feeding him the information concerning the complaints of Guzman and Gonzalez. (Ex. C - Taylor Dep. p. 146:19-22).

30.     According to Guadalupe Guzman, she and Maria Gonzalez spoke with Melanie Tabieros separately on August 6, 2019. (Ex. D - Guzman Dep. p. 39:21-40:1)

31.     According to Guadalupe Guzman and Melanie Tabieros, the new owner David Mashiach was in the offices on August 6, 2019 when she and Gonzalez went to Human Resources to complain. (Ex. D - Guzman Dep. p. 39:21-40:1; Ex. B - Tabieros Dep. p. 52:2-7)

32.     David Taylor (who was the Administrator) kept denying during his deposition that David Mashiach was affiliated with Defendant until months after Plaintiff was terminated. According to Taylor, David Mashiach did not become affiliated with Defendant until December 2019. (Ex. C - Taylor Dep. p. 14:24-15:3).

33.     As Administrator at Wheaton Village, Taylor was in charge of running the facility. Tabieros and all of the managers reported to him and he reported directly to David Mashiach, who he did not know was the owner of Defendant.  (Ex. C - Taylor Dep. pp.  14:5-23, 25:7-12)

34.     Guzman testified in her deposition that she only complained to HR once.  (Ex. D - Guzman Dep. p. 34:15-17) Tabieros claimed that Guzman and Gonzalez came to her office to complain twice.  (Ex. B - Tabieros Dep. p. 96:6-10; 50-53).

35.     According to Maria Gonzalez, she complained to HR three times.  (Ex. E - Gonzalez Dep. p. 103:12-14) Contrary to Guzman's testimony, Gonzalez testified that the only person she spoke to was Melanie Tabieros. (Ex. E - Gonzalez Dep. p. 86:19-24)  Gonzalez said no one else was present during the August 6, 2019 meeting except for Tabieros. (Ex. E - Gonzalez Dep. p. 86) She did not speak with David Mashiach or state that he was even present in the offices when she spoke with Melanie Tabieros.  (Ex. E - Gonzalez Dep. p. 86)

36.     Guzman did not expect Defendant to respond to their complaints and was not surprised when two weeks passed by and they did not receive any response from Defendant.  (Ex. D - Guzman Dep. pp. 43:3-8, 44:19-23). Gonzalez agreed that Tabieros did not respond to her complaints.  (Ex. E - Gonzalez Dep. 87:1-5) Neither Guzman nor Gonzalez quit their job while Plaintiff was their manager. (Ex. D - Guzman Dep. p. 16:12-14; Ex. E - Gonzalez p. 137:1-3)

37.     Guzman complained to Defendant that she had to do extra work because they were shorthanded most of the time and that Plaintiff was not ordering supplies. (Ex. D - Guzman p. 39:4-14). Guzman admitted that Plaintiff did not do the hiring.  (Ex. D - Guzman p. 50:10-21)

38.     Guzman also complained that Plaintiff stayed in her office all of the time and did not even make her own supply list. (Ex. D - Guzman p. 48:10-13) She also admitted that Plaintiff stayed later than she did and she did not know what Plaintiff did during that time.  (Ex. D - Guzman p. 48:3-49:6)

39.     Gonzalez testified that Plaintiff ordered supplies and put up stock. (Ex. E - Gonzalez Dep. p. 84).

40.     Guzman stated that Plaintiff helped cook, wash dishes, and set the table early in 2019, but did not help when they were shorthanded during the last few months of Plaintiff's employment. Maria Gonzalez, however, said that when Guzman (the cook) and the other two workers did not show up for work that Plaintiff would always take on the task of cooking and work with Gonzalez throughout the day to get the residents fed. (Ex. E - Gonzalez Dep. p. 125:20-126:10) Additionally, both Guzman and Gonzalez admitted that Plaintiff would wash dishes, set tables, put up stock, etc. (Ex. D - Guzman Dep. p. 30:13-18; Ex. E - Gonzalez Dep. p. 124:17-125:16) Gonzalez stated that Plaintiff tried to reduce the number of dishes to be washed by getting paper plates for the dining room. (Ex. E - Gonzalez Dep. p. 105:16-20)

41.     Gonzalez was never "mad" at Plaintiff. (Ex. E - Gonzalez Dep. p. 105). Gonzalez enjoyed her job when she was working under Plaintiff. (Ex. E - Gonzalez Dep. p. 61).

42.     Although Gonzalez claimed that Plaintiff "screamed" at her, she said it was just like raising your voice. (Ex. E - Gonzalez Dep. p. 89) The only difference is that you "scream" when you are mad and "yell" when you don't intend to raise your voice. Both constituted raising your voice. Gonzalez admitted that Plaintiff did not use curse words at work. (Ex. E - Gonzalez Dep. p. 110) Nevertheless, Guzman testified that she had no problem communicating with Plaintiff and Plaintiff had no problem communicating with Guzman. (Ex. D - Guzman Dep. p. 71:4-10)

43.     Taylor admitted that he visited 8 of 12 of the departments at Defendant on a daily basis. When he was walking through the Dietary Department, he did not recall hearing Plaintiff or anyone else raising their voices. (Ex. C - Taylor Dep. 87:12-20). According to Taylor, everybody raises their voice at Defendant because it is how they get heard. (Ex. C - Taylor Dep. p. 102:4-17). However, Taylor could not recall if he ever discharged anyone but Plaintiff for raising her voice. (Ex.

C - Taylor Dep. p. 102:18-24). In any event, with the number of times he walked through Dietary, he never came across Plaintiff acting inappropriately towards her staff.

44. Guzman did not stay employed with Defendant and quit in 2020, after Plaintiff was terminated. (Ex. D - Guzman Dep. p. 19:22-24). Gonzalez admitted that she has never looked for another job, even when Plaintiff was her supervisor. (Ex. E - Gonzalez Dep. pp. 120:24-121:2)

45. On the day she was terminated, Guzman stated that Plaintiff spoke to her staff where she thanked them and wished them well. (Ex. D - Guzman Dep. p. 64:4-18)

46. According to Guzman, Mr. Rivera replaced Plaintiff and then they had a full staff (i.e, no one called in except for one time). (Ex. D - Guzman Dep. p. 72:7-19)

47. According to Guzman, Rivera spoke Spanish and he only had to fill in once in a year because of staff shortage. (Ex. D - Guzman Dep. p. 72:1-11)

48. Gonzalez stated that they are short-staffed at least two times per week under Rivera. (Ex. E - Gonzalez Dep. pp. 55:20-56:16; 137:1-3)

49. Gonzalez stated that Rivera showed up one day and said he was the new boss. Gonzalez claimed that Rivera showed up approximately 2-3 months after Plaintiff left. (Ex. E - Gonzalez Dep. p. 28-29)

50. Melanie Tabieros, the only individual who spoke with Guzman and Gonzalez, testified that she was surprised that David Taylor made the decision to terminate Plaintiff. (Ex. B - Tabieros Dep. p. 35-4-12)

51. According to Tabieros, on the day of Plaintiff's termination, Taylor informed Tabieros that Plaintiff was being terminated for "no cause" which she understood to mean for no reason at all. (Ex. B - Tabieros Dep. pp. 34:19-35:9)

52.     During his deposition, Taylor accused Plaintiff's counsel of asking "frivolous questions" and told counsel that he was getting "frustrated" and need to "calm down." (Ex. C - Taylor Dep. pp. 75, 84:6-9, 89:4-18, 100:9-101:17).  Taylor would accuse Plaintiff's counsel of trying to corner him with a question.  (Ex. C - Taylor Dep. p. 55:2-18). Taylor would also seem to get angry, argumentative and/or challenging when asked to be more precise or explain his answers, or the time he was asked to sit up because he could not be seen on video.  (Ex. C - Taylor Dep. pp. 23:2-15, 64:20-65:10, 74:18-75:16, 149:9-24)  On a few occasions when Plaintiff's counsel would state that he was confused by the witness' testimony (ie, that Taylor was making contradictory statements), Taylor would remark Plaintiff's counsel was "confusing him too."  (Ex. C - Taylor Dep. pp.  44:3-45:24, 143:21-144:8).  Taylor further stated during his deposition that he lacked a clear recollection of certain events because he "retired a month ago."  (Ex. C - Taylor Dep. pp. 54:6-21).

Respectfully submitted,

GINA WHITMORE

By:___s/Barry A. Gomberg_____
         Attorney for Plaintiff

Barry A. Gomberg
Luanne M. Galovich
Barry A. Gomberg & Associates, Ltd.
53 West Jackson Blvd., Suite 1350
Chicago, Illinois  60604
gomberglaw@aol.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 31, 2021, I electronically filed the foregoing PLAINTIFF'S

LOCAL RULE 56.1(b)(3) RESPONSE TO DEFENDANT'S STATEMENTS OF FACT AND

ADDITIONAL STATEMENT OF FACTS with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to the following:

Mary Smigielski
Kenneth D. Walsh
Lewis Brisbois
550 West Adams Street, Suite 300
Chicago, IL. 60661
Mary.Smigielski@lewisbrisbois.com
Kenneth.Walsh@lewisbrisbois.com

*Attorneys for Defendant*

/s/ Barry A. Gomberg