UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GINA WHITMORE,<br><br>  Plaintiff,<br><br>  v.<br><br>WHEATON VILLAGE NURSING AND REHABILITATION CENTER, LLC,<br><br>  Defendant. | No. 20 CV 1732<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Gina Whitmore worked as a dietary manager for Wheaton Village Nursing and Rehabilitation Center for just under a year and a half. Whitmore, a Black woman, claimed that she was terminated because of her race and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* Wheaton Village moves for summary judgment under Federal Rule of Civil Procedure 56, arguing that it terminated Whitmore based on employee complaints. Whitmore has withdrawn her age discrimination claim, so Wheaton Village's motion is granted for that claim. But because a reasonable factfinder could conclude that racial discrimination caused Whitmore's termination, the motion is denied with respect to the Title VII claim.

I.

A.

Summary judgment is proper when there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Here, there are only a few undisputed facts. In March 2018, Wheaton Village hired Whitmore as a dietary manager to operate its kitchen and dining services and to supervise meal preparation for residents. [49] ¶¶ 1–3.[1] Administrator David Taylor made the decision to hire Whitmore as an at-will employee and Whitmore reported directly to Taylor. *Id.* ¶¶ 7, 8. A May 2019 performance evaluation rated Whitmore's work as "outstanding" overall, with Taylor commenting that Whitmore "works when employees are unavailable. Fills in [until] they return. (Well done)." [55] ¶ 7; [49-8].

In the summer of 2019, dietary aide Maria Gonzalez and cook Guadalupe Guzman complained to human resources employee Melanie Tabieros about Whitmore (their supervisor) and staffing shortages. [49] ¶¶ 11, 17–20, 26, 28–29; [38-1] at 39:5–13. Gonzalez and Guzman handed Tabieros written complaints dated August 6, 2019. [49] ¶¶ 26, 28–29. Gonzalez wrote that Whitmore came into the kitchen and screamed at her and Guzman for not making frosting for a cake, noted that they were short-staffed and overworked, and complained that Whitmore caused stress and did not ask to help with their workload. [49] ¶ 28. Guzman similarly complained of being short-staffed and said that Whitmore stressed her out, was not doing her job, and made Guzman and Gonzalez do all the work despite not having full personnel. [49] ¶ 29. Neither written complaint mentioned quitting. Tabieros met with Gonzalez and

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from Whitmore's response to the Wheaton Village's Local Rule 56.1 statement, [49], and Wheaton Village's response to Whitmore's statement of additional material facts, [55], where both the asserted fact and the opposing party's response are set forth in one document.

2

Guzman in August 2019, after they had submitted the written complaints. [49] ¶¶ 22–23, 25; [38-1] at 125:3–21.[2] Tabieros relayed their complaints to Taylor. [49] ¶ 21; [38] ¶ 26.

On August 19, 2019, Taylor terminated Whitmore's employment. [55] ¶ 8. Taylor told Whitmore that she was being discharged without cause. [55] ¶¶ 1, 26; [38-3] at 108:20–109:18, 135:17–22. Taylor and Tabieros both signed a termination form on the same day that documented the reason for Whitmore's termination as "without cause." [55] ¶ 8; [38-5] at 85. Four days later, Tabieros submitted an "Employer Response Form" that said Whitmore had not violated any known rule or policy and was discharged because "[e]mployment [was] not working out." [55] ¶ 9; [38-5] at 86.

**B.**

The parties diverge on the basis for Whitmore's firing. In Wheaton Village's telling, Taylor terminated Whitmore because he believed that, if he didn't, Guzman and Gonzalez were prepared to quit. Wheaton Village relies on Tabieros's testimony that Guzman and Gonzalez came to her to complain "that they're always short in the kitchen and they are trying their best," but sometimes they would forget to do something and Whitmore would get mad and reprimand them. [38-1] at 45:13–16, 45:20–46:8, 50:2–22. After submitting their written complaints, Tabieros said Guzman and Gonzalez came to her again—this time hyperventilating and about to

---

[2] Whitmore disputes this asserted fact because Gonzalez testified that she complained three times and went to Tabieros with Guzman only once. [49-5] at 105:16–20. And Guzman testified that she went to human resources just once. [49-4] at 34:18, 37:5–7. While the number of times Tabieros met with Guzman and Gonzalez is contested, that dispute is not material.

3

cry—and she believed they were going to leave to building and quit their jobs. [49] ¶¶ 25, 35; [38-1] at 51:20–52:21, 182:2–183:2. According to Tabieros, Guzman and Gonzalez essentially repeated what they said in the first meeting; namely, that they had been working short-staffed and without breaks, yet Whitmore—without offering to help—still got mad and reprimanded them for small things like forgetting to garnish food. [38-1] at 53:11–14, 60:4–16, 95:17–96:10.[3]

After that second meeting, Tabieros said she told Taylor that "the two staff came to see me again and they were crying and they were saying that they had been working short and that they are tired and yet there are getting reprimanded and nobody – and [Whitmore] has not been helping them." *Id.* at 104:8–11. She added that Guzman and Gonzalez "were about to walk out from the building because they're already tired and still nobody has been helping them. [Whitmore] has not been helping them and they are still getting reprimanded for things that they do not do or that they forget to do." *Id.* 105:1–6. Taylor testified that the only reason he let Whitmore go was because Guzman and Gonzalez were threatening to quit if something wasn't done. [49] ¶ 32; [38-3] at 32:11–19, 143:2–145:13. Taylor never spoke with Gonzalez or Guzman about the complaints "[b]ecause they were ready to

---

[3] Tabieros attached a letter summarizing the Gonzalez and Guzman complaints over a month after Whitmore's termination. [38-5] at 91. Wheaton Village says the summary "describ[ed] the basis for the decision to terminate Whitmore." [49] ¶ 34. But that assertion is not supported by the document and is contradicted by Tabieros's deposition testimony. For one, the document summarizes the complaints but does not mention, let alone suggest, that they were the "basis for the decision to terminate Whitmore." [38-5] at 91. And second, Tabieros testified well after September 2019 that she did not know that Taylor would fire Whitmore, was surprised by the decision, and never learned why Taylor terminated Whitmore. [38-1] at 35:11–39:5, 40:21–41:3.

walk out the door … and I had to move quickly." [49] ¶ 33; [38-3] at 34:16–19. Taylor said he told Whitmore that employees were threatening to quit because of Whitmore and her demeanor. [38-3] at 44:7–14.

Whitmore offers a different version. As Whitmore tells it, during her employment Taylor and Tabieros made several discriminatory comments about Black people to her. Whitmore said that on three or four occasions, after she'd told Taylor that a Black employee had taken off work, Taylor responded: "that's what Black people do, call off." [49] ¶ 36; [38-2] at 20:17–23, 128:2, 129:5–24. While Whitmore did not call off work herself, she testified "I'm Black, so if you constantly say 'that's what Black people do,' … I took it as he was referring to me, too, because I am an African American." [38-2] at 129:16–24. Whitmore also testified that in approximately two meetings, Tabieros made comments about Black women taking work off: "Oh, your sisters called off again. Black people call off all the time." [49] ¶ 38; [38-2] at 21:22–22:19.[4]

Whitmore also highlights evidence that casts doubt on Wheaton Village's asserted reason for her termination. Taylor admitted that when he informed Whitmore of her termination, he told her that the termination was without cause. [55] ¶ 1; [38-3] at 108:20–109:18.[5] According to Whitmore, Taylor and Tabieros met

---

[4] Wheaton Village asserts that Whitmore testified that Luvinia Pipes witnessed alleged discrimination. [49] ¶ 43. But while Whitmore offered Pipes as a witness who could "support [Whitmore's] claims in this case," she also said she never told Pipes "the things [Tabieros] and [Taylor] said." [38-2] at 40:21–41:8.

[5] Wheaton Village denies this fact because Taylor later testified that he did not lie to Whitmore. [55] ¶ 1 (citing [38-3] at 110:2–3). But Taylor's belief about whether he lied or not

5

with her in her office, Taylor told Whitmore he was "letting her go," handed her a termination paper that indicated her termination was without cause, and said "the nursing home field is a hard place to work." [38-2] at 44:18–45:9, 48:2–23. Whitmore said she was never given a warning about any wrongful behavior and testified: "I was never informed that I did anything wrong." *Id.* at 49:10–14.

What's more, Guzman and Gonzalez both testified that they did not tell Tabieros or Taylor that they intended to quit, let alone that they would quit unless Wheaton Village fired Whitmore. [49-4] at 65:9–15; [49-5] at 121:4–6. Tabieros testified that Taylor told her that he was discharging Whitmore without cause, and that she did not anticipate the firing and it caught her by surprise. [38-1] at 34:19–36:17. According to Tabieros, Taylor did not mention that the Guzman and Gonzalez complaints were the reason for letting Whitmore go, and Tabieros never learned why Taylor terminated Whitmore. *Id.* at 36:24–39:5, 40:21–41:3.

Whitmore also offered evidence that kitchen employee Luvenia Pipes complained about the way Whitmore's successor, Rafael Rivera, spoke to her, yet Wheaton Village did nothing to discipline him. Taylor hired Rivera, a Hispanic man, to replace Whitmore as dietary manager. [55] ¶¶ 5, 16.[6] Pipes, a Black woman, testified that she complained about what she believed to be rude and racist comments

---

does not controvert his testimony—he told Whitmore she was fired without cause, and he admitted in his deposition that this wasn't the truth. [38-3] at 108:20–109:18

[6] The record is unclear on when Rivera started working for Wheaton Village—some (including Rivera) testified that he started the same day as Whitmore's termination, while others said he started weeks or months later. [55] ¶¶ 2, 17. Rivera's exact start date is immaterial to the summary-judgment motion.

6

by Rivera. *Id.* ¶ 19; [38-4] at 11:23–24. Pipes said that Rivera would single her out. For example, if Pipes sat down for a break, Rivera would tell her she "could be scrubbing the walls or cleaning floors … [but] if it was one of the other employees that was sitting down doing – taking a break, he wouldn't bother them." [38-4] 16:12–17:1. Pipes said Rivera spoke to her in a rough and hostile manner. *Id.* at 17:8–14. Pipes complained to Tabieros a month after Rivera started because she felt he was being rude, disrespectful, and racist. *Id.* at 17:19–24, 18:17–18, 20:8–11, 21:2–4. Tabieros told Pipes that she would talk to Rivera about the issue, but Rivera's behavior toward Pipes did not change and he remained in the position. *Id.* at 20:10–11, 21:8–11.

## II.

### A.

Because this is summary judgment and Whitmore is the nonmovant, I construe all facts and reasonable inferences in her favor. *See Reives v. Illinois State Police*, 29 F.4th 887, 891 (7th Cir. 2022).

Title VII prohibits employers from racially discriminating against employees. 42 U.S.C. § 2000e-2(a). At summary judgment, the sole question is whether Whitmore has introduced evidence that "would permit a reasonable factfinder to conclude that [her] race … caused [her] discharge." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). In assessing Whitmore's race-discrimination claim at this stage,

I consider all the evidence as a whole, "eschewing any framework or formula." *Palmer v. Indiana Univ.*, 31 F.4th 583, 589 (7th Cir. 2022) (quoting *Igasaki*, 988 F.3d at 958).

That said, one method of showing discrimination is the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McDonnell Douglas* requires a plaintiff to establish a prima facie case of discrimination, then shifts the burden to the employer to offer a nondiscriminatory motive, and if the employer does so, the burden flips back to the plaintiff to show that the employer's stated reason was pretextual. *See Gamble v. FCA US LLC*, 993 F.3d 534, 537 (7th Cir. 2021) (citation omitted).

But the *McDonnell Douglas* framework "is just one way that a plaintiff can navigate her way to a jury in a discrimination case." *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020). To make out a case of race discrimination without resorting to *McDonnell Douglas*, a plaintiff "must provide either direct or circumstantial evidence that supports an inference of intentional discrimination." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020) (citation omitted). Types of circumstantial evidence that support an inference of intentional discrimination include "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Purtue*, 963 F.3d at 602 (quoting *Joll*, 953 F.3d at 929).

Whitmore has charted a path to the jury under either approach. Start with *McDonnell Douglas*. To establish a prima facie case of race discrimination, Whitmore

8

must "present evidence that (1) she is a member of a protected class, (2) she was meeting [Wheaton Village's] legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably." *Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019). If Whitmore makes this showing, then the burden shifts to Wheaton Village to produce a legitimate and nondiscriminatory reason for its action. *See Barnes v. Bd. of Trustees of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020). If Wheaton Village does so, then the burden shifts back to Whitmore to produce evidence that the reason was pretextual. *Id.*

Whitmore has established a prima facie case. There's no dispute that Whitmore is a member of a protected class and her termination constitutes a materially adverse employment action. But the parties are at odds over whether (1) Whitmore was meeting Wheaton Village's legitimate expectations, and (2) Whitmore has identified a similarly situated employee of a different race that was treated more favorably.

There is evidence showing that Whitmore's performance met legitimate expectations. Whitmore received a performance review three months before her firing that rated her performance as "outstanding" overall. [55] ¶ 7. The Gonzalez and Guzman complaints came after this performance review, but those complaints do not conclusively establish that Whitmore was not meeting expectations. None of Wheaton Village's documentation of Whitmore's performance or firing suggest that she was not meeting expectations, Whitmore testified that she was not given a reason for her

9

firing, and the "Employer Response Form" indicated that Whitmore had not violated any known rule or policy. [55] ¶ 9; [38-2] at 49:10–14; [38-5] at 85–86. Wheaton Village has not demonstrated how the complaints showed that Whitmore was underperforming. In fact, a jury could reasonably interpret the Guzman and Gonzalez complaints as showing the opposite—despite short staffing, Whitmore demanded compliance with Wheaton Village's quality standards. While "a smattering of decent reviews doesn't overcome the overwhelming number of documented problems," *see Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 560 (7th Cir. 2019), here, the decisionmaker Taylor observed that other than the complaints made by Guzman and Gonzalez, Whitmore was doing a good job. [55] ¶ 25. The record does not foreclose a reasonable inference that Whitmore was meeting Wheaton Village's expectations.

The next question is whether Whitmore has identified a similarly situated comparator. Whether employees are similarly situated depends on "whether the other employees' situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis.'" *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 656 (7th Cir. 2021) (quoting *de Lima Silva v. Dep't of Corrections*, 917 F.3d 546, 559 (7th Cir. 2019)). "This inquiry is flexible, common-sense, and factual. It asks, essentially, are there enough common features between the individuals to allow a meaningful comparison?'" *Howell*, 987 F.3d at 656 (citation and quotation marks omitted). While comparability "is a context-dependent question often suitable for a jury, when the facts of a case suggest that no reasonable jury could see enough

10

commonality for a meaningful comparison between the employees, summary judgment is appropriate." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 927 (7th Cir. 2019). But Whitmore "needs only one comparator to avoid summary judgment." *Howell*, 987 F.3d at 657.

Whitmore has identified a similarly situated employee of a different race—Rivera—who was treated more favorably. There's enough commonality between the two to permit meaningful comparison. Rivera held the same job as Whitmore, a subordinate (Pipes) made a complaint similar to those Guzman and Gonzalez allegedly made about Whitmore (hostile and rude comments), to the same HR representative (Tabieros), while Rivera worked under the supervision of Taylor. Yet Whitmore was fired and Rivera remained employed. Without some other explanation for the differential treatment, a jury might infer that Wheaton Village terminated Whitmore based on her race. *See de Lima Silva*, 917 F.3d at 559 (discrimination may be inferred when employer treats employee in a protected class less favorably than a similarly situated employee outside that class).

Wheaton Village contends that Rivera can't be a similarly situated employee because he started work after Whitmore's termination, citing *Quevedo v. Top-Line Furniture Warehouse Corp.*, No. 16-CV-5991, 2018 WL 1508530 (N.D. Ill. Mar. 27, 2018). There, after concluding that the plaintiff made less than another employee because the plaintiff lacked similar experience or skills, the court remarked that the comparator was "not similarly situated and Defendant did not even hire [the other employee] until after the last of Plaintiff's transfers." *Id.* at *11–12. Thus, the court

11

found it relevant that, on top of not being similarly situated, the plaintiff and the comparator were not employed at the same time. But the inquiry is not so rigid as to preclude as a matter of law any consideration of an employee hired after the plaintiff. *See Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 406 (7th Cir. 2007). The question is simply whether there's enough commonality to make comparison useful. *See Howell*, 987 F.3d at 656. And here, there's sufficient commonality between Rivera and Whitmore—same position, close in time, same supervisor, and a complaint by a subordinate about unprofessional behavior.

Because Whitmore has established a prima facie case of discrimination, Wheaton Village must offer a non-discriminatory reason for Whitmore's termination. Wheaton Village says that Taylor believed that Guzman and Gonzalez were prepared to quit if Wheaton Village did not terminate Whitmore; as such, Taylor terminated Whitmore to retain Guzman and Gonzalez. This reason is both facially legitimate and nondiscriminatory, so Whitmore must provide evidence that Wheaton Village's reason is pretext for discrimination. *See Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021).

Pretext in this context "means a lie, specifically a phony reason for some action," or, put another way, "an employer's efforts to cover their tracks or hide their real reason for [firing] an applicant." *Id.* (citations omitted). A reason is not pretextual if Wheaton Village "honestly believed" it. *Kellogg v. Ball State Univ.*, 984 F.3d 525, 528 (7th Cir. 2021) (citation omitted). At summary judgment, the question is whether

12

the evidence "create[s] a triable issue of fact with respect to [Whitmore's] burden of demonstrating that [Wheaton Village's] reasons are pretextual." *Id*.(citation omitted).

There are facts suggesting that Wheaton Village's stated reason is pretextual. For starters, Taylor told Whitmore that her termination was not for cause. [38-3] at 106:19–22, 107:13–19. But Taylor also testified—and Wheaton Village now contends—that he let Whitmore go because Guzman and Gonzalez complained and were threatening to quit. [49] ¶ 32; [38-3] at 32:11–19, 143:2–145:13. And when Taylor was pressed whether "when [he] told Ms. Whitmore there was no cause that that wasn't the truth, am I right?" Taylor responded: "Correct. Yes." *Id*. at 108:20–24, 109:18. "As a general rule, a reasonable trier of fact can infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 577 (7th Cir. 2015). A jury might believe the reason Wheaton Village now offers. But a reasonable jury could also find that this reason—which does not appear in any documentation of Whitmore's firing—is phony.

A jury could further doubt whether Taylor truly believed Gonzalez and Guzman were prepared to quit if he didn't discharge Whitmore. Neither written complaint references quitting, and both Guzman and Gonzalez testified that they did not tell Tabieros or Taylor that they intended to quit. [49-4] at 65:9–15; [49-5] at 121:4–6. Tabieros said Taylor did not mention the Guzman and Gonzalez complaints as the reason for letting Whitmore go, and even months after the firing, she did not know why Taylor fired Whitmore. [38-1] at 36:24–39:5, 40:21–41:3. And a jury might

13

question whether Taylor was truly concerned that Gonzalez and Guzman would walk off the job, when he waited two weeks to act and never followed up with Gonzalez or Guzman. Wheaton Village is right that it was not required to inform Whitmore of the exact basis of her termination and its policy permitted it to terminate employees without resorting to progressive discipline. *See* [56] at 5; [38-5] at 32. But a jury could reasonably conclude that telling Whitmore that she was terminated without cause, only to later admit that this was not the truth, undermines the credibility of the reasons Wheaton Village now offers.

Even if Whitmore's claim failed under *McDonnell Douglas*, however, the evidence as a whole would still permit an inference of intentional discrimination. Recall that to make out a case of race without reference to *McDonnell Douglas*, a plaintiff may offer evidence of "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Purtue*, 963 F.3d at 602 (quoting *Joll*, 953 F.3d at 929).

Whitmore offers evidence of each. First, there's evidence that Taylor and Tabieros—the two Wheaton Village employees involved in her termination—made multiple discriminatory comments about Black people directly to Whitmore.[7] Wheaton Village emphasizes that these comments were not about Whitmore

---

[7] Wheaton Village argues that, even assuming Tabieros made discriminatory comments, they would not support an inference of discrimination because Taylor made the decision to terminate Whitmore on his own. [56] at 3 n.1. But Tabieros was intimately involved in both the termination process and documenting the justifications for Whitmore's firing, so her comments are relevant in considering the evidence as a whole.

specifically, but rather that Taylor and Tabieros were talking about other Black employees taking work off.[8] The comments to Whitmore negatively stereotyping Black people are no less probative of racial animus simply because Taylor and Tabieros based their generalizations on other employees.[9] And as discussed, there's evidence that Rivera received better treatment than Whitmore under similar circumstances, and Wheaton Village's justifications for Whitmore's termination lack trustworthiness. Viewing the evidence together in a single pile—the discriminatory comments, the differential treatment, and the elusive justifications for discharge—a reasonable jury could conclude that Wheaton Village terminated Whitmore because of her race.[10]

With respect the Title VII claim, the motion for summary judgment is denied.

**B.**

In response to Wheaton Village's motion, Whitmore has withdrawn her claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. *See* [48] at

---

[8] Taylor denied making these comments. [38-3] at 180:5–8. But I credit Whitmore's version of events at summary judgment. *See Ortiz*, 834 F.3d at 762.

[9] Wheaton Village says there's a presumption of nondiscrimination because Taylor both hired and fired Whitmore. While that's an inference the jury could draw, it is not a definitive presumption that defeats a discrimination claim at the summary-judgment stage. *See McKinney v. Off. of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017) ("Our cases … have clarified that this inference is not a conclusive presumption and that it should be considered by the ultimate trier of fact rather than on summary judgment or the pleadings.").

[10] Whitmore says Wheaton Village terminated two other African American managers in 2019—a social worker and a nursing director—who had been hired at about the same time as Whitmore. [55] ¶ 6; [48] at 15. But Whitmore offers no other facts about these employees, and there's nothing to suggest that they were discharged because of their race. Accordingly, the termination of these employees does not support an inference of intentional discrimination.

23. As such, Wheaton Village is entitled to summary judgment on that claim. *See Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 511 (7th Cir. 2020).

### III.

The motion for summary judgment, [37], is granted in part, denied in part. By May 26, 2022, the parties shall file a status report stating their availability for trial in 2022 and 2023, and stating whether the parties request a referral to the magistrate judge to conduct a settlement conference.

ENTER:

                                                                                                                                              _____

                                                     Manish S. Shah
                                                     United States District Judge

Date: May 5, 2022